In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-3789

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTHONY L. VAUGHN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Terre Haute Division.
No. 2:09 CR 0007—**Larry J. McKinney**, *Judge.*

ARGUED JULY 8, 2010—DECIDED JULY 30, 2010

Before BAUER, RIPPLE, and KANNE, *Circuit Judges.*

PER CURIAM. While incarcerated at the federal penitentiary in Terre Haute, Indiana, Anthony Vaughn repeatedly stabbed a prison guard with an eight-inch shank. He pleaded guilty to committing aggravated assault on a federal officer, *see* 18 U.S.C. § 111(a), (b), and the district court sentenced him to 180 months' imprisonment, 45 months above the top of the guidelines range. Vaughn's sole argument on appeal is that

the sentence is substantively unreasonable. We disagree and affirm the judgment.

The events that precipitated Vaughn's assault began the morning of April 23, 2009, when he and two other inmates were lifting weights in their housing unit, a practice that (at least in that particular unit) was officially prohibited but often tolerated by the guards. Officer Douglas Camden saw the men exercising and told them to put away the weights because a lieutenant was about to inspect the unit. The men disregarded the instruction and were still lifting weights when the lieutenant arrived. Camden and the lieutenant went into the guards' office inside the housing unit, and Vaughn followed, apparently wishing to discuss the weight-lifting issue. Camden told Vaughn he was busy and that they would discuss the matter later. About 15 minutes later, after the lieutenant had departed, Vaughn returned to the office and confronted Camden when he was alone.

According to Camden, Vaughn pointed at him and said, "You better watch how you talk to me." Vaughn added that he had "stabbed a cop" before and would do so again. Vaughn's threats escalated, and Camden twice ordered him to leave the office. Vaughn responded by lunging at Camden with a shank. He missed initially but in the ensuing struggle stabbed Camden twice in his left shoulder and inflicted multiple cuts to his face. Camden broke free and fled the office, but Vaughn followed and stabbed him two more times before other guards intervened.

At sentencing Camden testified that the attack had diminished his physical strength by about 40%, substan-

tially limited the range of motion in his left shoulder, and caused numbness in his neck, head, and shoulder. His doctors and physical therapists, said Camden, had warned that these impairments could be permanent. Camden added that he relives the incident in recurring nightmares, has become irritable with family and friends, and worries about his ability to return to police work.

Edward Wheele, the FBI agent who investigated the attack, authenticated photographs of the weapon, which depict an eight-inch metal shank. Wheele had interrogated Vaughn, who blamed the attack on Camden and never inquired about his recovery.

In his allocution Vaughn asked the district court to spare him from spending the rest of his life in prison. He noted that he had been in prison since his 21st birthday and reflected on his efforts to better himself during his 15 years of incarceration. He is not violent by nature, Vaughn insisted, and before the assault he had tried to keep a clean record because he was nearly eligible to transfer to a lower-security facility. He only possessed the shank, Vaughn explained, to protect himself from another inmate he disarmed to prevent an attack on a different guard. Vaughn's lawyer added to these statements by emphasizing that, although the presentence report reveals a significant history of disciplinary infractions while in prison, most of those incidents had occurred more than ten years earlier and the few recent infractions were nonviolent.

The district court calculated a total offense level of 29, *see* U.S.S.G. §§ 2A2.2(a), (b)(2)(C), (b)(6), 3A1.2(c), 3E1.1(a),

and a Category III criminal history, yielding a guidelines imprisonment range of 108 to 135 months. In explaining its choice of a 180-month term to run consecutively to Vaughn's undischarged sentence, the court emphasized that the senseless nature of this attack suggested that Vaughn has a poor ability to control his behavior. The lack of self control is also evident, reasoned the court, from the "continuing nature" of the offense, referring to Vaughn's decision to trail Camden from the office and attack a second time, even after the officer had tried to escape. The judge also observed that Vaughn's weapon was "as nasty" as any he had seen before and could only serve a violent purpose. Finally, the court concluded that a longer sentence was justified for deterrence purposes in light of the heightened need for security within the prison system.

Vaughn challenges only the substantive reasonableness of his above-range prison sentence. A sentence is reasonable if the district court properly calculated the guidelines range and then exercised appropriate discretion in applying the factors specified in 18 U.S.C. § 3553(a). *See Gall v. United States*, 552 U.S. 38, 56 (2007); *United States v. Panice*, 598 F.3d 426, 441 (7th Cir. 2010). A district court is free to impose a sentence outside the guidelines range so long as the judge explains why that sentence is appropriate under § 3553(a). *See United States v. Bartlett*, 567 F.3d 901, 909 (7th Cir. 2009).

The district court complied with this procedure. The court properly calculated the guidelines range—a calculation that Vaughn does not dispute—and concluded that

a higher prison sentence was necessary to account for the considerations relevant under § 3553(a). *See United States v. Smith*, 562 F.3d 866, 872 (7th Cir. 2009). The court explained that its decision rested on the need to deter Vaughn and others from such senseless attacks, the effort by Vaughn to prolong the attack, and the gruesome quality of the weapon.

Vaughn's attempts to undermine these reasons are unpersuasive. First, the district court appropriately focused on the need to deter Vaughn given the senseless nature of this attack. Vaughn entered the guards' office with a shank, looking for a fight. And he used that shank to stab Camden numerous times. The court reasonably noted that, if this was how Vaughn behaved while hoping for a transfer to a lower-security facility, his judgment could not be trusted. *See United States v. Walker*, 447 F. 3d 999, 1008 (7th Cir. 2006).

The court also reasonably relied on the "continuing nature" of the attack. Vaughn objects to this characterization because the attack lasted only seconds, but the court was not commenting on the attack's duration. Instead, the court was concerned with Vaughn's decision to renew the assault even after Camden had escaped the office.

Finally, the district court appropriately based its decision on the "nasty" nature of the weapon. Vaughn argues that his offense level was increased because he used a dangerous weapon, *see* U.S.S.G. § 2A2.2(b)(2)(B), and the court failed to explain why that increase was insufficient to account for the nature of the shank. But the

district court did explain itself. The judge properly compared Vaughn's attack to "typical" prison assaults, *see* § 3553(a)(2)(A), (6); *United States v. Carter*, 538 F.3d 784, 793 (7th Cir. 2008), and remarked that Vaughn had used a weapon that was as gruesome as any the court had ever seen. Because this and the other explanations the district court gave for imposing an above-guidelines sentence are all reasonable, we affirm the judgment.