In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-1737

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

HENRY D. JOHNSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 3:04-cr-30046-JES-BGC-1—**Jeanne E. Scott**, *Judge*.

ARGUED DECEMBER 14, 2010—DECIDED MARCH 24, 2011

Before POSNER, RIPPLE and ROVNER, *Circuit Judges*.

RIPPLE, *Circuit Judge*. A jury in the United States District Court for the Central District of Illinois convicted Henry Johnson of several crimes related to the possession and sale of crack cocaine. The district court sentenced Mr. Johnson to life in prison. In his initial appeal, we affirmed the convictions, but we reversed the sentence and remanded to allow the district court to take account of the Supreme Court's intervening de-

cision in *Kimbrough v. United States*, ___ U.S. ___, 128 S. Ct. 558 (2007). *See United States v. Johnson*, 584 F.3d 731, 740 (7th Cir. 2009). On remand, the district court again imposed a sentence of life imprisonment, and Mr. Johnson now appeals. We conclude that our prior remand did not permit relitigation of the drug quantity. We further conclude that the district court procedurally erred because it did not determine, after considering the sentencing factors under 18 U.S.C. § 3553(a), that resentencing Mr. Johnson under his guideline range of natural life in prison was "sufficient, but not greater than necessary, to comply with § 3553(a)(2). *Id.* § 3553(a). Therefore, we must vacate and remand for this determination.

# I

# BACKGROUND

## A. Prior Proceedings

We presume familiarity with the facts as stated in our previous opinion. After he was arrested in Quincy, Illinois for selling crack cocaine and marijuana to a government informant, Mr. Johnson was charged with operating a drug trafficking conspiracy. The jury convicted him of engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848 and nine other drug-related offenses.

The prescribed statutory minimum for the continuing criminal enterprise conviction was twenty years' imprisonment; the maximum was life. At the sentencing

hearing, the district court attributed over ten kilograms of crack to Mr. Johnson. Because of its 100:1 crack-to-powder cocaine ratio, the United States Sentencing Guidelines prescribed that Mr. Johnson's offense level warranted a punishment of life imprisonment. The district court sentenced Mr. Johnson accordingly. *Johnson*, 584 F.3d at 733.

In his first appeal, Mr. Johnson principally challenged his convictions, but he also included in his brief three sentences which disputed the district court's calculation of the quantity of drugs attributed to his convictions. Specifically, Mr. Johnson asserted, the evidence had not established whether he had dealt in crack or powder cocaine. Had he been dealing the latter, his offense level would have been much lower.

While the original appeal was pending, we determined that the court would benefit from the assistance of amicus counsel, and we therefore appointed counsel to file a brief on behalf of Mr. Johnson. During this period, the Supreme Court decided *Kimbrough*, which held that "the district court may sentence a crack offender below the guidelines range if it believes the 100:1 ratio results in a greater sentence than is necessary under the sentencing factors set forth in 18 U.S.C. § 3553(a)." *Johnson*, 584 F.3d at 740. Prior to that holding, the law of our circuit had required district courts to apply the ratio regardless of whether the district court thought its application unreasonable in any specific instance. *See id.* (citing *United States v. Taylor*, 520 F.3d 746, 746-47 (7th Cir. 2008); *United States v. Miller*, 450 F.3d 270, 275 (7th Cir. 2006)).

After preserving the arguments from Mr. Johnson's first brief, the amicus, like Mr. Johnson, principally challenged the convictions. The brief did not contest the quantity of crack cocaine attributed to Mr. Johnson, but it did request a remand to allow the district court to decide whether it believed application of the crack-to-powder ratio appropriate in Mr. Johnson's case. The Government agreed with this request.

We affirmed Mr. Johnson's convictions and accepted the parties' agreement that Mr. Johnson should be resentenced in light of *Kimbrough. See Johnson*, 584 F.3d at 740. We explained that the remand was necessary "so that the district court may consider whether the disparate treatment of crack versus powder cocaine under the guidelines . . . renders his life sentence unreasonable." *Id.* Our opinion made no mention of Mr. Johnson's contention regarding the drug-quantity calculation.

## B. Proceedings Before the District Court on Remand

On remand, Mr. Johnson asked the district court to reconsider the quantity of drugs attributed to him. The court refused, for three reasons: the scope of the remand did not permit the challenge; the law-of-the-case doctrine precluded relitigation of the issue; and Mr. Johnson waived the contention by not raising it adequately in his first appeal.

Mr. Johnson next urged the district court to disregard the Guidelines' 100:1 crack-to-powder ratio. He contended that the negative effects of crack and powder

cocaine are virtually identical, that the ratio leads to harsher sentences for low-level dealers than for major drug traffickers and that the Department of Justice believes that Congress should eliminate the ratio. He requested the court to impose a sentence of twenty years' imprisonment—the statutory mandatory minimum sentence for a continuing criminal enterprise conviction, *see* 21 U.S.C. § 848(a). According to Mr. Johnson, such a sentence would be "sufficient but not greater than necessary to achieve the purposes of sentencing articulated in 18 U.S.C. [§] 3553." R.195 at 11.

In evaluating Mr. Johnson's contentions, the court recognized that "an argument can be made that the powder cocaine is at least approximating the evil of the crack cocaine." *Id.* at 42. It also noted that

> the House of Representatives of the Congress has passed a bill recently that would do away with the disparity between powder cocaine and cocaine base or crack. However, the United States Senate, it is my understanding, has passed a bill that would change the ratio from 100 to 1 to 20 to 1.
>
> The entire Congress hasn't agreed on anything as of this moment, but it looks like there is some movement afoot to at least reduce the disparity between the two drugs.

*Id.* at 43.

In light of these inconclusive developments, the court determined that it should not deviate from the Guide-

lines: "[E]ven though I recognize that I could disregard the guideline range with respect to the calculation of the cocaine and the crack cocaine and the disparity, I don't think it is appropriate to do so at this time." *Id.* at 48. In the court's view, "the more prudent approach is to let Congress do whatever it chooses to do in the end . . . . [T]he more prudent thing is to wait until that happens rather than to have each judge in America just winging it, doing what he or she thinks ought to be the way it comes out." *Id.* at 44.

The court also expressed its concern that, by departing from the ratio in Mr. Johnson's case, it would be creating a disparity between Mr. Johnson and "those people who are locked into sentences who, at this point anyway, cannot get back in front of a court for re-sentencing." *Id.* at 42. Whereas these other people "are stuck with tremendous sentences," the court explained, Mr. Johnson "would get a much lower" one. *Id.* Such disparity could "create[] certain disciplinary problems in the prison population." *Id.* at 43.

Next, the court referenced the sentencing factors listed in 18 U.S.C. § 3553(a), partially by adopting its discussion of those factors from Mr. Johnson's first sentencing hearing. After reiterating its concern that deviating from the ratio would create sentencing disparities, the court discussed the details of the crime: Mr. Johnson dealt "a tremendous quantity of drugs" and was "not a low[-]level dealer." *Id.* at 45. His criminal activity in the Quincy area lasted for ten years, and Mr. Johnson, as leader of a gang, was "insulated" from easy detection and

capture. *Id.* at 45-46. Moreover, Mr. Johnson organized gang meetings, assigned responsibilities to other members, moved gang operations when police were approaching and "meted out" punishments to errant underlings. *Id.* at 46. The court directed Mr. Johnson to "[t]hink about all the young people in the Quincy area who became addicted to cocaine because of your activity" and observed, "This is a serious bunch of crimes, that's why the guideline range was so high." *Id.* at 47.

Finally, the court repeated that Congress, not the court, should remedy any injustice in Mr. Johnson's life sentence. It predicted that, to ameliorate unduly harsh sentences for crack offenses, "there will be some remedial action taken by the Congress and Sentencing Commission concerning cocaine base and powder cocaine in terms of that disparity and how they are counted." *Id.* The court even stated that it wished to "hold[] out hope" to Mr. Johnson that the disparity eventually would be resolved, *id.,* and hinted that Mr. Johnson deserved future relief: "[A]t such time as the Congress and the Commission act, it's likely you will have relief at some juncture thereafter." *Id.* at 48. Again, however, the court emphasized that "the more prudent approach is to wait until that happens" and then "give the opportunity to everyone who is under such sentences to be re-sentenced as well." *Id.* at 47. The court then reimposed the original sentence of natural life, stating, however, that it was doing so "regrettably." *Id.* at 48.

## II

## DISCUSSION

### A. Standard of Review

We review de novo Mr. Johnson's contention that the district court failed to appreciate the advisory nature of the Sentencing Guidelines. *United States v. Carter*, 530 F.3d 565, 577 (7th Cir. 2008).

### B. Scope of the Remand

Mr. Johnson contends that our prior remand entitled him to relitigate the drug quantities attributed to him. We cannot accept this contention. The remand should be viewed in the context of the first appeal; there, Mr. Johnson's only reference to the drug-quantity calculation was the cursory, three-sentence argument at the end of his brief. We often decline to address underdeveloped and meritless contentions, *see, e.g.*, *United States v. Husband*, 312 F.3d 247, 251 (7th Cir. 2002), and we followed that course in our earlier opinion. We remanded Mr. Johnson's case to the district court to consider one issue only: "the disparate treatment of crack versus powder cocaine" in the Guidelines. *Johnson*, 584 F.3d at 740. In doing so, we "identifie[d] a discrete, particular error that [could] be corrected on remand without the need for a redetermination of other issues." *Husband*, 312 F.3d at 251 (quotation marks omitted). We therefore implicitly limited the question on remand to whether the district court would have imposed a different sentence in light of *Kimbrough*.

Mr. Johnson asserts, however, that the district court was required to recalculate the amount of crack cocaine attributable to him in order to conduct its *Kimbrough* analysis. To be sure, drug quantities are relevant to the impact of the crack-to-powder ratio. At high quantities, for example, the ratio makes no difference in the outcome of the sentencing range. *See United States v. Corner*, 598 F.3d 411, 414 n.† (7th Cir. 2010) (describing case in which a defendant had "distributed so much cocaine that the statutory maximum sentence . . . would have been life imprisonment even if all of his sales had been cocaine powder"). In this case, however, the district court already had determined the drug quantities at the first sentencing, and we left those calculations undisturbed. Accordingly, we agree with the district court that Mr. Johnson was not entitled to a new determination of the drug quantities attributed to him.

### C.  Presumption of Reasonableness

Mr. Johnson next challenges the procedure by which the district court again determined to sentence him to life in prison. According to Mr. Johnson, the district court should not have presumed that the life sentence prescribed by the Guidelines was reasonable without first inquiring into whether the sentence conformed to 18 U.S.C. § 3553(a). It did not satisfy, he contends, its independent obligation in this regard by reference to possible future legislation.

The presumption of reasonableness of a sentence within the range prescribed by the Guidelines "applies

only on appellate review," not to the sentencing court, which "may not presume that a within-Guidelines sentence is reasonable." *United States v. Rollins*, 544 F.3d 820, 839 (7th Cir. 2008) (citing *Rita v. United States*, ___ U.S. ___, 127 S. Ct. 2456, 2465 (2007)); *see also United States v. Schmitt*, 495 F.3d 860, 864 (7th Cir. 2007). It certainly is not improper for a district court to espouse the penal philosophy reflected in the Guidelines. *See Rollins*, 544 F.3d at 840. Nevertheless, to ensure that the court avoided a simple presumption that a within-Guidelines sentence was reasonable, we also must be able to infer that the court, in exercising its discretion, determined that the sentence conformed with the parsimony principle of § 3553(a): The sentence must be "sufficient, but not greater than necessary, to comply with" the sentencing purposes set forth in § 3553(a)(2). 18 U.S.C. § 3553(a); *see also Rollins*, 544 F.3d at 840.[1]

---

[1]    *See also United States v. Dorvee*, 616 F.3d 174, 182 (2d Cir. 2010) (analyzing § 3553(a)'s parsimony clause in the context of determining whether the district court presumed that a Guidelines-range sentence was reasonable); *United States v. Chavez*, 611 F.3d 1006, 1010 (9th Cir. 2010) (explaining that § 3553(a)'s parsimony clause expresses "an overarching principle [that] necessarily informs a sentencing court's consideration of the entire constellation of section 3553(a) factors" (alteration in original, quotation marks omitted)); *United States v. Martinez-Barragan*, 545 F.3d 894, 898-99, 904-05 (10th Cir. 2008) (analyzing whether a sentence was procedurally unreasonable by considering whether it conformed to § 3553(a)'s parsimony principle); *United States v. Williams*, 475 F.3d 468, 476-

(continued...)

Generally, even when statements made during sentencing call into question whether the district court appreciated the advisory nature of the Guidelines, we can resolve doubts in favor of the court when its application of the § 3553(a) factors assures us that the sentence was imposed in conformity with the parsimony clause. For example, in *United States v. Rollins*, 544 F.3d 820 (7th Cir. 2008), we reviewed a district court's refusal to "vary [from the Guidelines] in advance of Congress" because it did not "believe that trial judges are in a position to set policy." *Id.* at 840 (quotation marks omitted). The district court in *Rollins* also explicitly stated, however, after considering the § 3553(a) factors, that the sentence it imposed was "sufficient but not greater than necessary to comply with the basic aims of sentencing." *Id.* From these remarks, we were able to conclude that the court did not believe itself limited by " 'an outside constraint on [its] discretion that [it] was not free to set aside.' " *Id.* (quoting *Schmitt*, 495 F.3d at 865); *see also United States v. Diaz*, 533 F.3d 574, 577 (7th Cir. 2008) (concluding that a district court did not presume the reasonableness of a within-Guidelines sentence because "[t]he court did not say that a sentence within the guidelines range was always reasonable" and because it emphasized that the sentence was reasonable for that defendant in light of the § 3553(a) factors (emphasis omitted)).

---

(...continued)
77 (2d Cir. 2007) (explaining that district courts must consider the requirements of § 3553(a)'s parsimony clause in fashioning an appropriate sentence).

In Mr. Johnson's case, however, we cannot resolve the ambiguity of the district court's statements at resentencing. On the one hand, the court mentioned the § 3553(a) factors and acknowledged that it could "disregard" the Guidelines range reflecting the powder and crack cocaine disparity. R.195 at 48. On the other hand, when it explained that adhering to Congress's judgment would be "prudent," *id.* at 44, the court did not explain whether, or why, doing so was based on the individual circumstances of Mr. Johnson's case and was not greater than necessary to fulfill the purposes of § 3553(a). In fact, the district court told Mr. Johnson, "[I]t's likely you will have relief" once Congress does reduce the crack-to-powder ratio. *Id.* at 48. If the district court believed that Mr. Johnson would deserve "relief" from his life sentence if the ratio were changed, then it seems unlikely that the court believed a life sentence to be no greater than necessary to adhere to the sentencing factors. Our concern is heightened further by the district court's statement that it was reimposing the life sentence recommended by the Guidelines "regrettably," *id.* This statement strongly suggests that the district court believed that an unconstrained application of the § 3553(a) factors would have yielded Mr. Johnson a lesser sentence.

The essence of *Kimbrough* is to permit district courts to depart from the advisory ratio when its application would result in a sentence that is "greater than necessary to accomplish the goals of sentencing." *Kimbrough*, 128 S. Ct. at 570 (internal quotation marks omitted); *see id.* at 576 (upholding a deviation from the ratio where the district court "properly homed in on the particular cir-

cumstances of [the defendant's] case and accorded weight to the Sentencing Commission's consistent and emphatic position that the crack/powder disparity is at odds with § 3553(a)"). Considered in their totality, the district court's comments create an unacceptable risk that, in imposing a life sentence, it did not account appropriately for the parsimony clause in the governing statute or for the individual circumstances of Mr. Johnson's case. *See United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008) ("A sentence is reasonable if the district court gives *meaningful* consideration to the factors enumerated in 18 U.S.C. § 3553(a) . . . ." (emphasis added)); *United States v. Ross*, 501 F.3d 851, 852, 854 (7th Cir. 2007) (per curiam) (vacating sentence where the district court engaged in an "apparent weighing of § 3553(a) factors" but suggested that it could not depart from the Guidelines range even though the sentence was "too harsh in light of" the defendant's individual circumstances and "greater than is necessary to deal with the drug problem" (quotation marks omitted)).

Moreover, the district court's analysis of possible sentencing disparities between Mr. Johnson and other criminal defendants was misguided. The court was concerned that, if it departed from the ratio in Mr. Johnson's case, it would be creating a disparity between Mr. Johnson and "those people who are locked into sentences who, at this point anyway, cannot get back in front of a court for re-sentencing." R.195 at 42. It further expressed the concern that such disparities could negatively impact prison discipline.

Section 3553(a)(6), however, instructs sentencing courts to consider only "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Here, the district court analyzed disparities between Mr. Johnson and others, not in light of the similarity of offense and personal characteristics, but in light of the legal inability of other defendants to take advantage of *Kimbrough*. *See Kimbrough*, 128 S. Ct. at 574 (acknowledging that "some departures from uniformity [are] a necessary cost of the remedy" and instructing district courts that "sentencing practices in other courts" and potential disparities "must be weighed against the other § 3553(a) factors and any unwarranted disparity created by the crack/powder ratio itself"). More fundamentally, it was the duty of the district court to impose a sentence in conformity to the law as it stood on the day of sentencing. Its concern for disparities with sentencing decisions imposed under an earlier sentencing regime were not relevant.

## Conclusion

Accordingly, we vacate and remand for a redetermination of the sentence in light of the parsimony principle of 18 U.S.C. § 3553(a). Other aspects of the sentence are not to be revisited.

VACATED and REMANDED