**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 27, 2011
Decided May 13, 2011

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 10-3569

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Southern District of Indiana, Terre Haute Division |
| *v.* | No. 2:10CR00001-001 |
| ODILON MOLINERO-JIMENEZ, *Defendant-Appellant*. | William T. Lawrence, *Judge*. |

**O R D E R**

While imprisoned for unlawful reentry, Odilon Molinero-Jimenez was caught with a shank. He pleaded guilty to one count of possession of a weapon in prison, *see* 18 U.S.C. § 1791(a)(2), (b)(3), and was sentenced to 27 months' imprisonment, the bottom of the applicable guidelines range. On appeal he argues that his sentence was substantively unreasonable, because, he says, the guidelines do not distinguish between possession and use of a weapon in prison and, therefore, unreasonably punish possessors as harshly as users. We affirm.

While Molinero-Jimenez was in the prison yard, correctional officers saw him dig up an object from the ground and put it into his sock. After searching him, they found a

homemade weapon: a piece of metal twisted from a chainlink fence. It was six inches long, sharpened to a point on one end, and wrapped with cloth on the other end. Molinero-Jimenez told officers he fashioned the shank because he feared being assaulted. Correctional officers found no evidence that he brandished, used, or threatened anyone with the weapon.

At the sentencing hearing following his plea, Molinero-Jimenez argued that the applicable guidelines provision, U.S.S.G. § 2P1.2(a)(2), did not distinguish between use and possession of a weapon in prison. He urged a below-range sentence, arguing that § 2P1.2(a)(2) was unreasonably severe because use of the shank would have yielded the same sentencing range as mere possession. He did not object, however, to the probation officer's calculations in the presentence report (PSR). The government responded that Molinero-Jimenez would have received a higher sentence if he had used the weapon because a different guideline provision would have applied. The district court rejected Molinero-Jimenez's contention, calculated a guidelines range of 27 to 33 months, and sentenced him to the bottom of that range.

On appeal Molinero-Jimenez contends that § 2P1.2(a)(2) resulted in a sentence that was disproportionately high for his conduct. He argues that, because § 2P1.2(a)(2) punished him as severely as an inmate who uses a weapon in prison, the guideline conflicts with 18 U.S.C. § 3553(a), which requires court's to impose sentences that are "sufficient, but not greater than necessary." Molinero-Jimenez points out that § 2P1.2(a), unlike other guidelines, assigns offense levels based on the kind of weapon possessed. Other guidelines, he notes, adjust the offense level upward depending on whether a weapon was used. *See e.g.* U.S.S.G. § 2B3.2 (Extortion by Force or Threat of Injury or Serious Damage) (4-level increase if dangerous weapon used); U.S.S.G. § 2A2.2 (Aggravated Assault) (4-level increase if dangerous weapon used); U.S.S.G. § 2A2.3 (Minor Assault) (7-level increase if offense involved physical contact). Molinero-Jimenez, therefore, asserts that he was sentenced as severely as an inmate who wields a weapon in prison.

Inmates who wield weapons in prison, however, are more severely sentenced under the guidelines than those who merely possess them. Had Molinero-Jimenez assaulted an inmate with the shank, he could have been convicted not merely for possession, but also for assault with a dangerous weapon with intent to do bodily harm, *see* 18 U.S.C. § 113(a)(3). In this scenario, Molinero-Jimenez could have been subject to § 2A2.2, which imposes a higher base-offense level than § 2P1.2(a)(2) with further increases depending on the severity of injury inflicted. *See, e.g., United States v. Vaughn*, 614 F.3d 412, 415 (7th Cir. 2010); *United States v. Bogan*, 267 F.3d 614, 624 (7th Cir. 2001); *United States v. Williams*, 520 F.3d 414, 422-23 (5th Cir. 2008).

Nevertheless Molinero-Jimenez contends that the district court should have

sentenced him below the applicable guidelines range under § 3553(a), which requires courts to impose sentences that are "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a); *see United States v. Johnson*, No. 10-1737, 2011 WL 1045841, at * 4-5 (7th Cir. Mar. 24, 2011). Because he does not challenge the district court's calculation of his guidelines range, however, the only question presented is whether his sentence was substantively unreasonable under an abuse-of-discretion standard. *See Gall v. United States*, 552 U.S. 38, 51 (2007). And as the sentence was the bottom of the sentencing range, the sentence is presumptively reasonable. *See Gall*, 552 U.S. at 51; *United States v. Curb*, 626 F.3d 921, 927 (7th Cir. 2010).

Here the record demonstrates that the district court properly considered the § 3553(a) factors when fashioning a within-guidelines sentence. *See United States v. Campos*, 541 F.3d 735, 749-50 (7th Cir. 2008). In discussing the nature and circumstances of Molinero-Jimenez's offense, *see* § 3553(a)(1), the district court reasonably found that possession of a weapon in prison presents unique and enhanced dangers not only to its possessor, but also to fellow inmates and correctional officers. *See United States v. Akers*, 476 F.3d 602, 606 (8th Cir. 2007) ("When [illegal behavior] involves smuggling [contraband] into a correctional facility . . . additional and unique risks of harm to inmates and corrections staff arise."). And the district court found it significant that Molinero-Jimenez fashioned and hid the shank, rather than stumbling upon it. In evaluating the need for the sentence imposed, *see* § 3553(a)(2), the district court explained that Molinero-Jimenez had "been deported twice from the United States to Mexico, and was serving a 77-month sentence of imprisonment for being unlawfully found in the United States after having previously been deported." It noted that he was arrested in the United States on at least 39 separate occasions and has 19 adult-criminal convictions.

AFFIRMED.