**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 11, 2012
Decided January 30, 2013

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 12-2638

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 11-CR-30164-MJR |
| CASEY M. RIGSBY, *Defendant-Appellant*. | Michael J. Reagan, *Judge*. |

## O R D E R

Casey Rigsby was sentenced to 10 years in prison for possessing a gun after a felony conviction, the statutory maximum for that crime. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(2). That sentence is significantly above the guidelines imprisonment range as calculated by the district court, and Rigsby argues that the term is unreasonably long. We conclude that the court likely understated the applicable range, but even if Rigsby's prison sentence is above the properly calculated range, the court adequately explained its decision to impose the maximum term. We thus uphold the sentence.

Rigsby incurred 8 convictions between the ages of 13 and 18. These crimes included battery, aggravated assault with a deadly weapon, aggravated unlawful use of a weapon, and possession of cannabis. Then at age 19, while on conditional release for his unlawful-use conviction, Rigsby was charged with criminal trespass to a vehicle. He also was found with a handgun during an unrelated traffic stop in Centreville, Illinois.

The discovery of that gun led federal authorities to charge Rigsby with possession of a firearm by a felon. He was in state custody when the federal indictment was returned, but in early October 2011 he appeared in federal court on a writ of habeas corpus ad prosequendum. Initially he was detained pending trial, but the government engineered his release so that he could work as an informant for the Bureau of Alcohol, Tobacco, Firearms and Explosives. Chief Judge Herndon, who approved the government's request to use Rigsby as an informant, had misgivings:

> As a judge, when I see convictions for—multiple convictions for battery, aggravated assault with a deadly weapon, aggravated unlawful use of a weapon a couple of times, and other crimes, I see a person on paper that looks to be a danger to society. So as a judge I'm just hesitant to say, "Oh yeah let's let this guy out of jail and let's let him work with a federal agency to try to catch other criminals." Just doesn't, at first blush, make sense to me.

For that reason the chief judge personally addressed Rigsby and warned that release on bond was not a license to commit more crimes:

> I look at this record and it's like committing crimes is a habit with you. Just like I get up in the morning and first thing I do is have a cup of coffee. Now, that's a habit, maybe an addiction. But committing crimes can no longer be your addiction. It can no longer be your habit. You're done. You got it?

Rigsby agreed and was released, but within a week the government declared him to be an absconder, after he failed to report to his probation office.

Rigsby soon was caught and pled guilty to the charged violation of § 922(g)(1). His presentence report recounts a childhood marked by frequent changes in residence because his mother could not find affordable housing after leaving his abusive stepfather. This instability led Rigsby to quit high school in the ninth grade and run away from home. He has never held a legitimate job and has committed additional crimes that did not result in convictions. According to the presentence report, Rigsby confessed to an ATF agent that in 2010 he had beaten and robbed a drug dealer, striking the dealer in the head more than a dozen times with the butt of a gun. Rigsby also had confessed to possessing 10 different handguns since age 17 and using one of them in a gunfight on a public street. The probation officer calculated a guideline imprisonment range of 27 to 33 months based on a total offense level of 16 and a criminal history category of III.

At sentencing before Judge Reagan, Rigsby conceded that the presentence report is factually accurate. The government supplemented that report with testimony from an FBI agent who previously had been assigned to a task force targeting violent crime in Rigsby's

hometown of East St. Louis, Illinois. The agent said that Rigsby was notorious in that community and had been implicated in several crimes, including yet another gunfight that wounded a young girl hit by a stray bullet. The agent added that he personally had warned Rigsby more than a year before his arrest on the § 922(g)(1) charge that a federal prosecution was inevitable if he kept committing crimes. In addition, an ATF agent testified at sentencing that Rigsby had confessed to being a founding member of a small gang that had aspired to sell drugs but ultimately specialized in armed robberies. The agent recounted also that Rigsby had confessed to stealing a gun and boasted that, when the police caught him with the loaded firearm underlying the § 922(g)(1) indictment, he and his companions had been on their way to confront a man who shot a member of their gang.

For reasons not explained in the record, prosecutors made no effort to connect any of this information to guidelines adjustments affecting Rigsby's offense level. In the plea agreement the government had promised to tell the district court that Rigsby's total offense level appeared to be 20, but in that agreement the government also disclosed that it would be advocating a sentence of 96 months. The government thus accepted the probation officer's guidelines calculations, but, as it said it would do, argued for an above-range sentence of 96 months. A term of that length, the government argued, was justified by Rigsby's flight, his general disinterest in improving himself or his community, the large number of guns he had possessed over the previous three years, and his commission of several serious crimes in quick succession (many of which were not represented in his criminal history score). Rigsby's lawyer countered that a sentence at the high end of the guideline range, 33 months, would be adequate; he asserted that Rigsby's difficult childhood might make him more amenable to rehabilitation. The lawyer further characterized Rigsby's violation of § 922(g)(1) as a garden-variety case that did not merit an above-range prison sentence.

During his argument for a within-range sentence, Rigsby's lawyer commended the probation officer for presenting "a very balanced" presentence report that includes both "the good and the bad." Upon hearing that statement, Judge Reagan confessed to difficulty seeing the "good" in Rigsby's background and pressed defense counsel to identify what he saw in the presentence report that was helpful. Counsel offered that Rigsby had not beaten his girlfriend and had played a role in raising their child.

After Rigsby allocuted, the judge responded to the lawyer's argument that Rigsby's federal gun crime had been relatively innocuous:

> You don't have—I don't want to deprecate the seriousness of the other felon
> in possession cases, but you don't have the garden variety generic felon in
> possession case. You have one of the most senior Assistant U.S. Attorneys
> possible, you got an FBI agent—and I don't get FBI anymore in here. . . . You

got a senior officer from the ATF and Illinois State Trooper here and U.S. Attorney in the back. You got me looking at you and telling you with impunity that in 38 years in the legal business from when I first started as a probationary policeman until now, I have never had a more dangerous 20-year old stand in front of me or that I represented or prosecuted in 38 years. You are the most dangerous 20-year old I have ever encountered.

The judge asked Rigsby directly if he had made any positive contributions to society. Rigsby offered that, before dropping out of school, he had gotten good grades, played basketball, and participated in spelling bees. He added that he had helped his girlfriend raise their son.

In deciding that 10 years was the appropriate sentence, Judge Reagan opted not to consider Rigsby's uncharged crimes. The judge commented that, although the government might be angry that Rigsby had fled after agreeing to cooperate, the court would not take into account that displeasure. Still, the court said, other factors in 18 U.S.C. § 3553(a) warranted a term at the statutory maximum. The judge recounted Rigsby's background and criminal history and noted that the § 922(g)(1) violation had occurred while Rigsby was on conditional discharge from an earlier conviction. The court also found that Rigsby would have used the gun underlying this case if not for the intervening traffic stop that led to his arrest. *See* 18 U.S.C. § 3553(a)(1). A lengthy sentence was needed, the judge reasoned, to protect the public from Rigsby. Indeed, in the judge's estimation, Rigsby's criminal history showed that he posed a greater recidivism risk than a typical murderer. *See id.* § 3553(a)(2)(C). The judge observed that Rigsby had been warned, both by the chief judge and the FBI agent, that he must stop committing crimes but had disregarded those warnings. The judge also noted that as a repeat offender Rigsby would need more deterrence than a first-time offender. *See id.* § 3553(a)(2)(B). The judge again noted Rigsby's failure to make a positive contribution to society.

Rigsby now appeals, citing four purported errors by Judge Reagan. He first argues that the judge impermissibly counted against him as an aggravating factor his lack of positive qualities. But that is not what the judge did; the court sentenced Rigsby based on his numerous negative qualities after giving Rigsby an opportunity to identify positive factors. The judge invited Rigsby's lawyer to identify those positive attributes only after *the lawyer* had asserted that Rigsby's presentence report includes evidence of both positive and negative traits.

Rigsby next argues that the district judge improperly considered as aggravating factors the presence at sentencing of the United States Attorney and the assignment of this prosecution to a senior assistant United States Attorney. Rigsby rests this argument entirely on an Eighth Circuit decision stating the unremarkable proposition that sentencing judges

should not rely on "irrelevant or improper" factors. *See United States v. Growden*, 663 F.3d 982, 984 (8th Cir. 2011). The contention is meritless; the judge did not mention the presence of the United States Attorney or the involvement of his seasoned prosecutor while reviewing the factors listed in § 3553. Rather, the court explicitly stated that Rigsby's sentence would not reflect the government's apparent displeasure that Rigsby had absconded after prosecutors had gone to bat to secure his release from pretrial detention.

Rigsby next argues, this time without citing *any* authority, that the judge engaged in "inexplicable hyperbole" requiring reversal by describing him as the "most dangerous" 20-year-old the judge had ever encountered and observing a murderer would be less likely to recidivate. But Rigsby has not alerted us to any case where Judge Reagan represented or sentenced a more dangerous 20-year-old and offers no information about the recidivism rates of murderers. Rigsby's habitual lawbreaking is plain from the presentence report, and Judge Reagan was not alone in seeing Rigsby's recidivist tendencies; Chief Judge Herndon likened Rigsby's lawbreaking to an "addiction" and concluded that he poses a danger to society. Given Rigsby's disregard for the law and his history of gun crimes, Judge Reagan's assessment of Rigsby's dangerousness was hardly "inexplicable hyperbole."

Rigsby also argues that the district court erred by basing his sentence, in part, on the fact that he had ignored the warnings of Chief Judge Herndon and the FBI agent. Ignoring that advice, Rigsby argues, was an unintended consequence of his flight, and the two-level increase in offense level for obstruction of justice already accounts for that flight. *See* U.S.S.G. § 3C1.1. This argument is illogical; Rigsby concedes that the guidelines are advisory, and the judge's rationale—that it will take greater punishment to deter a defendant who commits another crime after being warned against committing more crimes—is commonsensical.

Rigsby last asserts that his prison sentence is substantively unreasonable. A district court is free to impose an above-range prison sentence so long as the judge explains why the chosen term is appropriate under § 3553(a). *United States v. Vaughn*, 314 F.3d 412, 414–15 (7th Cir. 2010). And here the court discussed how the § 3553(a) factors apply to Rigsby and explained at length its basis for imposing a maximum sentence. Rigsby does not challenge the judge's discussion as inadequate, nor does he identify any mitigating argument that the court ignored.

That is enough to uphold the sentence, but for completeness we note that the degree to which Rigsby's prison sentence exceeds the guidelines range is greatly exaggerated because the government inexplicably agreed to an artificially low calculation of Rigsby's total offense level. *See United States v. Henzel*, 668 F.3d 972, 977 (7th Cir. 2012). The government's agreement with Rigsby to accept a total offense level of 20 was not binding on the district court, *see* U.S.S.G. § 6B1.4(d); *United States v. Martin*, 287 F.3d 609, 621 (7th Cir.

2002); *United States v. Mankiewicz*, 122 F.3d 399, 402 (7th Cir. 1997), but apparently the probation officer gave great weight to the plea agreement in applying the guidelines. Rigsby committed a crime during his release—bail jumping, in violation of 18 U.S.C. § 3146—but the government apparently overlooked the three-level increase that should have resulted. *See* U.S.S.G. § 3C1.3; *United States v. Dison*, 573 F.3d 204, 210 (5th Cir. 2009) (applying § 3C1.3 for violation of § 3146); *United States v. Fitzgerald*, 435 F.3d 484 (4th Cir. 2006) (same, though applying § 2J1.7, the predecessor of § 3C1.3); *United States v. Benson*, 134 F.3d 787, 788 (6th Cir. 1998) (same, applying § 2J1.7). Nor is there any discussion in the record about why Rigsby's admission that he sometimes sold guns to make money would not mandate a 4-level increase for trafficking. *See* U.S.S.G. § 2K2.1(b)(5) ("If the defendant engaged in the trafficking of firearms, increase by 4 levels."). The government also failed to advocate for a 2-level increase based on the ATF agent's undisputed testimony that Rigsby had confessed to obtaining the gun in this case from his cousin by trading another gun that he had stolen. *See* U.S.S.G. § 2K2.1(b)(4)(A) ("If any firearm . . . was stolen, increase by 2 levels."). And even though the district court concluded that Rigsby had intended to use the gun to retaliate against an enemy of his gang, the government did not press for a 4-level increase under § 2K2.1(b)(6). *See id*. ("If the defendant . . . possessed . . . any firearm with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels.").

If the government had not lowballed Rigsby's total offense level and instead brought these upward adjustments to the attention of the probation officer and the district court, Judge Reagan might have calculated a total offense level of 29, rather than 16. At that higher level, Rigsby's 120-month prison sentence would fall, not above, but *within* the resulting guidelines range of 108 to 135 months. And, of course, a prison sentence within the range would be presumed reasonable on appeal. *See Rita v. United States*, 551 U.S. 338, 347 (2007); *United States v. Chapman*, 694 F.3d 908, 916 (7th Cir. 2012). "Thus, we are presented with an avoidable debate about the reasonableness of a prison term that, in reality, is probably exactly what the Sentencing Commission intended." *Henzel*, 668 F.3d at 978. An ounce of attention to the applicable guidelines provisions could have prevented a pound of appeal.

**AFFIRMED**.