In the

# United States Court of Appeals

## For the Seventh Circuit

No. 22-1081

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

NICHOLAS B. SWANK,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 20-cr-40071 — **Sara Darrow**, *Chief Judge.*

ARGUED MAY 31, 2022 — DECIDED JUNE 27, 2022

Before SCUDDER, ST. EVE, and KIRSCH, *Circuit Judges.*

ST. EVE, *Circuit Judge.* In the late fall of 2020, Federal Bureau of Investigation ("FBI") agents apprehended Nicholas Swank in Rock Island, Illinois. Swank had travelled from his home in Iowa believing he was meeting a fifteen-year-old boy for sex. In fact, Swank had fallen for a sting operation on a popular mobile dating application. Swank pleaded guilty to multiple federal offenses. At sentencing, the district court

imposed a within-Guidelines term of 210 months' imprisonment.

Swank appeals his sentence, arguing the district court procedurally erred when it suggested the 18 U.S.C. § 3553(a)(2)(B) factor of adequate deterrence was "tethered" to the Guidelines. We disagree. When read as a whole, the transcript indicates that the district court followed the proper procedure and did not err in determining the appropriate sentence.

## I. Background

On November 5, 2020, Nicholas Swank logged onto a dating application under the username "lkng4younger." This is not the first time he had "looked" for "younger"—Swank, a registered sex offender in Iowa, had acted on his sexual desires for underage males before. Now, he began a conversation with a male user he believed was eighteen years old. After eight days of sexually explicit online chatting, the user told Swank he was fifteen. Unbeknownst to Swank, the user was an undercover FBI agent.

Swank immediately drove from his home in Muscatine, Iowa, to meet with the user in Rock Island, Illinois. FBI agents arrested Swank once he arrived. Soon after, Swank confessed. He admitted to exchanging sexually explicit images and messages with the user and crossing state lines with the intent of bringing a fifteen-year-old male back to Iowa for sex. Swank pleaded guilty to attempted enticement of a minor, travel with intent to engage in illicit sexual activity, and soliciting an obscene visual depiction of a minor.

At sentencing, the district court calculated a final offense level of 32 and assigned Swank a criminal history category of

VI, setting a Guidelines range of 210 to 262 months' imprisonment. Swank sought the statutory minimum 10 years. He identified as mitigating the fact that he drove past the Rock Island address twice without stopping and never left his vehicle. Swank claimed this indicated he changed his mind about meeting the minor and knew it was wrong to do so. By the time FBI agents stopped Swank, he had already decided to leave. Swank also argued that other, more egregious, sex with a minor offenses may have carried a lower sentencing range. The district court addressed both arguments as it considered the § 3553(a) factors.

The district court began by measuring the seriousness of Swank's offense. It noted that Swank spent a week seeking to have sex with a younger male then drove almost an hour across state lines when he came to believe the user he chatted with was fifteen. The district court discounted Swank's last-minute change of heart, reasoning that the sexually explicit communications of the preceding days and Swank's belief regarding the user's age indicate a real minor would have been at great risk of harm. It then stated that its "biggest concern" was the risk Swank posed to the public. The district court found that a 210-month sentence was sufficient but not greater than necessary because of Swank's risk to recidivate and the danger he presented to others. It listed Swank's extensive criminal history: sexually assaulting his thirteen-year-old stepbrother, failing to register with the Iowa Sex Offender Registry on multiple occasions, and recently meeting a minor on school property "in a manner that is almost exactly what happened here." This "pattern" of similar conduct added to the district court's concerns about the risk Swank posed to the public. The district court then rejected Swank's comparison to other offenses, explaining that its sentencing decision needed

to account for similarly situated offenders who commit the same offense. Believing Swank's likeliness to reoffend "extremely high," the district court had "no confidence that a variance would be appropriate."

The district court then turned to adequate deterrence. What followed forms the basis of Swank's appeal:

> I do think that general deterrence is a factor here in these types of offenses. I mean, you sat in a car for almost an hour and drove up here thinking about what you were doing. You could have turned around earlier. You didn't. I, I – I struggle a little bit with [counsel's] argument about ten years is enough to be an adequate general deterrent. It's kind of -- probably for some people, if it is going to be a general deterrent, a decade, 15 years, I mean, it is a little arbitrary, but it is the way that our system works is it's tethered to the reality of the sentences and the ranges and everything like that. And so if somebody knows that they will face a guideline-range sentence in federal court if they commit this type of offense, then that's what I think is the appropriate metric to base a general deterrent argument on. And I think that if a variance is – for that could minimize the general deterrent impact that the sentence could have.

The district court declined to grant a variance and imposed a sentence at the low end of the Guidelines. Swank timely appealed his Guidelines sentence.

## II. Analysis

We review de novo a district court's sentencing procedures. *United States v. Pennington*, 667 F.3d 953, 956 (7th Cir. 2012). A district court must "(1) correctly calculate the

applicable guidelines range; (2) give meaningful considera-tion to the § 3553(a) factors and any nonroutine sentencing ar-guments raised by the defense; and (3) state the factors on which the sentence is based." *United States v. Greene*, 970 F.3d 831, 834 (7th Cir. 2020) (citing *Gall v. United States*, 552 U.S. 38, 50 (2007)).

Section 3553(a) "contains an overarching provision in-structing district courts to 'impose a sentence sufficient, but not greater than necessary,' to accomplish the goals of sen-tencing." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (quoting § 3553(a)). This provision is known as the "parsi-mony principle." *See Pennington*, 667 F.3d at 956–57. If, after weighing the § 3553(a) factors, a district court determines that a sentence below the Guidelines range is sufficient, but not greater than necessary, to accomplish the goals of sentencing, it should give the below-Guidelines sentence. *See id.* at 957. A district court errs when it imposes a Guidelines sentence an-yway.

Swank's argument is purely procedural. He suggests the district court presumed a Guidelines sentence was reasonable by "tether[ing]" general deterrence to the Guidelines range. Indeed, district courts may not presume that a Guidelines sentence is reasonable and doing so is a procedural error. *Rita v. United States*, 551 U.S. 338, 351 (2007) (citing *United States v. Booker*, 543 U.S. 220, 259–60 (2005)); *Pennington*, 667 F.3d at 957–58. Swank maintains that, by justifying this tethering as "the way that our system works," the district court revealed that it departed from the parsimony principle and applied the presumption of reasonableness in its place.

A sentencing court's comments are not made in isola-tion—we look to the whole transcript to consider whether the

district court applied the § 3553(a) factors appropriately. *See United States v. Allday*, 542 F.3d 571, 573–74 (7th Cir. 2008). If the transcript indicates the district court properly applied the § 3553(a) factors, we may presume on appeal that a sentence complies with the parsimony principle. *United States v. Armand*, 856 F.3d 1142, 1145 (7th Cir. 2017). When the district court's comments are too ambiguous to preclude the possibility that it applied the presumption of reasonableness, we must vacate and remand for resentencing. *See Pennington*, 667 F.3d at 958 (observing that the district court cited the Guidelines as the only basis for declining to impose a below-Guidelines sentence); *United States v. Johnson*, 635 F.3d 983, 989–90 (7th Cir. 2011) (noting the district court's soliloquy regarding future acts of Congress indicated it might have gone below the Guidelines range); *United States v. Panice*, 598 F.3d 426, 444 (7th Cir. 2010) (explaining that multiple statements show the district court may have felt bound to the Guidelines).

Here, the district court's comments do not undermine our confidence that it applied the § 3553(a) factors appropriately. The district court provided meaningful consideration of the factors, addressed Swank's arguments regarding a variance, and stated the factors that formed the basis for Swank's sentence. It imposed a 210-month sentence because of Swank's risk to recidivate and the danger he posed to others. Combined with Swank's extensive criminal history exhibiting a pattern of similar conduct, the district court determined that Swank's case did not call for a variance.

The district court's clear statements rejecting a variance for reasons unrelated to adequate deterrence resolve any ambiguity arising from its subsequent statements about general deterrence. The transcript indicates the district court did not

"tether" its sentence to the Guidelines, let alone presume a Guidelines sentence is reasonable. Instead, the district court's treatment of the § 3553(a) factors demonstrates it knew "how our system works," and believed a Guidelines sentence satisfied the sentencing goals of § 3553(a) in Swank's case. The record does not present sufficient ambiguity for us to disturb this finding.

### III. Conclusion

For these reasons, we affirm.