In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-3206

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DAKOTA L. CHILDS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:17-cr-30038-SMY-1 — **Staci M. Yandle**, *Judge.*

ARGUED APRIL 21, 2022 — DECIDED JULY 14, 2022

Before EASTERBROOK, ROVNER, and BRENNAN, *Circuit Judges*.

ROVNER, *Circuit Judge.* Dakota Childs appeals from the
sentence he received on revocation of supervised release. He
asserts that the twenty-four month term of imprisonment was
procedurally and substantively unreasonable. We affirm.

**I.**

In 2017, Childs pled guilty to one count of possession of a firearm by a felon. The district court sentenced him to thirty-seven months' imprisonment, followed by twenty-four months of supervised release. In July 2019, Childs began serving his first term of supervised release. Childs is addicted to alcohol and controlled substances, and so in addition to the regular mandatory and administrative conditions (which included prohibitions on the possession or use of controlled substances), the court imposed special conditions requiring Childs to abstain from alcohol, to participate in treatment for drug and alcohol dependence, and to participate in mental health assessment and treatment services. Childs' first term of supervised release was marked by numerous violations of the conditions imposed. Within two months, his probation officer filed a petition to revoke release for resisting a peace officer, two charges of reckless driving, driving under the influence of alcohol, other traffic offenses, possession of marijuana, retail theft, and use of alcohol. The court revoked the first term of supervised release and sentenced Childs to a fourteen-month term of imprisonment, followed by thirty-six months of supervised release.

The second term of supervised release commenced on February 11, 2021. The special conditions included a prohibition on the possession or use of alcohol or other intoxicants, participating in a remote alcohol testing program for six months, participating in treatment for drug and alcohol dependence, submitting to drug testing, and participating in mental health assessment and treatment. In mid-May, Childs' probation officer submitted a noncompliance report to the

court, noting that Childs had missed remote alcohol tests on at least a dozen occasions, had tested positive for alcohol twice, and had multiple tests rejected for lack of facial recognition. As a result, Childs was required to wear an alcohol monitor on his ankle.

Two months later, the probation officer submitted another noncompliance report, alleging that Childs tested positive for alcohol and that his ankle monitor sent a "tamper alert" at least twice. On the same date as a tamper alert, June 22, 2021, police were called to Childs' home where his best friend had overdosed on controlled substances. This violated an administrative condition prohibiting Childs from knowingly associating with an individual who unlawfully possessed a controlled substance. The next day, Childs tested positive for methamphetamine, cocaine, and marijuana. His probation officer referred him for residential and outpatient drug treatment.

On September 15, 2021, his probation officer filed a motion to revoke his second period of supervised release. In addition to the earlier reported violations, the motion noted that police responded to Childs' residence on August 4, 2021, after he overdosed on controlled substances. On August 9, when he reported for inpatient treatment, he tested positive for alcohol, fentanyl, methamphetamine, and marijuana. On September 9, he was discharged from inpatient treatment for testing positive for alcohol and marijuana in the course of that treatment. He was again fitted with an alcohol monitor which reported alcohol use on September 12 and 13.

The probation officer filed an amended motion to revoke supervised release on September 21, 2021. This petition noted

that Childs had overdosed again, on September 16, and that he
was found in possession of a switchblade knife and fentanyl
capsules at that time. At a hospital, he tested positive for
fentanyl. During the second period of supervised release,
Childs had also committed traffic offenses, including driving
while unlicensed and uninsured, disregarding a stop sign, and
failure to use a seatbelt. He had also left the jurisdiction
without permission, failed to submit multiple written reports
to his probation officer, failed to report to his probation officer,
and failed to report his contacts with police officers.

The district court held a hearing at which Childs pled guilty
to all of the charged violations. The only contested issue was
the sentence. The government asked the court to impose a
sentence of ten months' imprisonment followed by no addi-
tional supervision. The government noted in mitigation that
Childs had taken responsibility for his many violations. In
aggravation, the government pointed out that this was Childs'
second revocation and that he began violating the conditions
shortly after being released a second time. The government
urged the court to consider deterrence and contended that
Childs was a danger to others because of his driving violations
and his continued drug and alcohol use. He was also a danger
to himself as evidenced by his overdoses. Childs' lawyer asked
the court to impose a term of seven months' imprisonment for
two reasons. First, he noted that Childs had accepted responsi-
bility and in fact had admitted to conduct for which he
expected to be charged in state court. Second, counsel argued
that a lengthier term of imprisonment would serve no purpose
because, in light of Childs' addictions, "[i]t really is all on him
at this point." According to counsel, no amount of prison

would change the outcome unless Childs did what he needed to do to address his addictions. Counsel argued that a short sentence would allow Childs to "get on with" the steps he needed to take to overcome his addictions.

The court remarked that Childs was repeatedly back before the court, that at the age of thirty he had amassed a significant criminal history, and that he had engaged in dangerous conduct during his first period of supervised release that included driving while under the influence of alcohol. The court noted the many opportunities he had been given for treatment that he had not successfully completed, concluding that no further efforts would work unless Childs committed himself to the process, which in the court's view, he had not done at the time of sentencing. The court then focused on deterrence and the need to protect the public from Childs' future crimes. The court noted that Childs had previously operated a vehicle under the influence of drugs and alcohol, and had recently overdosed and also had a friend overdose in his presence, at his home. The court concluded that, "in his current mentality and with his current approach to life," he posed a significant threat to the public. The court also re-marked that the violations went beyond Administrative Conditions and that the probation office had exhausted every tool it had to reintegrate Childs into the community and help him with rehabilitation, but he had demonstrated that he was not amenable to reintegration or rehabilitation. Citing the offenses, Childs' criminal history, and the need for deterrence and protection of the public, the court invoked the PROTECT Act and sentenced Childs to twenty-four months' imprison-

ment with no further term of supervised release. Childs appeals.

## II.

On appeal, Childs contends that the court made two errors. First, Childs complains that the court committed procedural error in finding that Childs was a danger to others because the court relied on unreasonable inferences in reaching that conclusion. Second, Childs maintains that the sentence was substantively unreasonable because the court failed to give sufficient weight to the fact that he had nearly died during a drug overdose, which he contends is a far greater motivator for him to overcome addiction than additional prison time would be.

Our review of a sentence imposed in a revocation proceeding is highly deferential. *United States v. Boultinghouse*, 784 F.3d 1163, 1177 (7th Cir. 2015). We will sustain the sentence so long as it is not "plainly unreasonable." *Boultinghouse*, 784 F.3d at 1177; *United States v. Kizeart*, 505 F.3d 672, 673–75 (7th Cir. 2007). A district judge who revokes a defendant's supervised release and imposes a term of imprisonment "must consider both the Guidelines policy statements that prescribe the penalties for supervised release violations, *see* U.S.S.G. Chapter 7, Part B, and the statutory sentencing factors set forth in 18 U.S.C. § 3553(a), as applicable to revocations of supervised release, *see* 18 U.S.C. § 3583(e)[.]" *Boultinghouse*, 784 F.3d at 1177. The judge must also "say *something* that enables the appellate court to infer that [she] considered both sources of guidance." *United States v. Robertson*, 648 F.3d 858, 860 (7th Cir.

2011) (emphasis in original). "Otherwise, competent appellate review is impossible." *Id*.

Our review of sentences for violations of the conditions of supervised release is highly deferential because the Sentencing Commission issued non-binding, advisory policy statements rather than formal Guidelines to govern such sentences, implying that the sentencing court should have more than usual flexibility in sentencing for violations of conditions of supervised release. *Robertson*, 648 F.3d at 859. The policy statements set forth "Grades" of possible violations of the conditions of supervised release, U.S.S.G. § 7B1.1, and recommend a range of imprisonment based on the Grade of the violations in combination with the defendant's Criminal History category. U.S.S.G. § 7B1.4.

In this case, the parties agreed that Childs' most serious violations were properly categorized as Grade B, that his Criminal History category was III, and that the policy statements recommended an imprisonment range of eight to fourteen months. Childs does not dispute that his sentence was within the maximum allowed by the PROTECT Act. He complains only that the court based its sentence on unreasonable inferences and that it was substantively unreasonable.

Specifically, Childs argues that there is no evidence in the record that would allow the court to infer that he contributed in any way to his friend's overdose, and also no evidence that his traffic offenses during his second period of supervised release involved driving under the influence of drugs or alcohol. These arguments misapprehend the standard of

review and mischaracterize the district court's explanation of the sentence.

Beginning with the traffic offenses, the court committed no error in inferring that Childs posed a danger to the public. Close in time to his new driving offenses, Childs was using alcohol, methamphetamine, marijuana, cocaine and fentanyl. He had previously driven under the influence of alcohol and controlled substances. The court inferred that he imposed a significant threat to the public because of the risk that he would again combine driving with the consumption of alcohol and controlled substances. That was an eminently reasonable inference to draw from the undisputed facts.

Similarly, it was reasonable to infer that the public needed to be protected from future crimes by Childs because of his own overdoses and the overdose of his friend in his home. Childs was prohibited from associating with others engaged in criminal activity, including the possession of controlled substances, and he pled guilty to doing so in the revocation hearing. The day after his friend's overdose, Childs himself tested positive for methamphetamine, cocaine and marijuana. Subsequent to his friend's overdose, Childs himself twice overdosed on controlled substances. In discussing the need to protect the public from future crimes by Childs, after noting that Childs posed a future risk of driving under the influence, the court remarked, "He's had a recent situation where not only did he almost take himself out, but another individual overdosed in his presence at his home. And so, there – Mr. Childs, in his current mentality and with his current approach to life, poses a significant threat to the public." Contrary to Childs' claim on appeal, the court did not expressly infer that

he provided a place for his friend to consume drugs or that he supplied the drugs to his friend. Instead, the court cited the overdoses in concluding that Childs' current approach to life posed a significant threat to the public. In other words, the court inferred that Childs had not in fact been deterred from future criminal conduct by the near misses he experienced with his own overdoses and that of his friend. There was nothing plainly unreasonable in that analysis.

Childs' remaining arguments fare no better. He contends that the court's "ten-month variance above the top of the advisory guidelines range" was substantively unreasonable and that the court failed to provide a sufficiently compelling justification for the increase. But this was not a "Guidelines" sentence and so labeling this sentence as a "variance" above the Guidelines is a mischaracterization. A court is not required to provide a "compelling" justification for imposing a sentence above the recommendation of the non-binding policy statements. Childs also faults the district court for failing to give enough weight to his near-death experience during his second overdose. The court here considered the facts of Childs' violations, his criminal history, the relevant section 3553(a) factors, and the policy statements, and then said enough about the reasons for the sentence to provide us an adequate basis for review. That was more than sufficient. We are not here to reweigh the facts or second-guess the district court's application of the policy statements or section 3553(a) factors to those facts. Because the sentence was not plainly unreasonable, we affirm.

AFFIRMED.