In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 21-3314

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TRAVIS GATES,

*Defendant-Appellant.*

———————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 20-cr-00284 — **Sarah Evans Barker**, *Judge.*

———————

ARGUED SEPTEMBER 30, 2022 — DECIDED OCTOBER 19, 2022

———————

Before WOOD, ST. EVE, and KIRSCH, *Circuit Judges.*

ST. EVE, *Circuit Judge.* Travis Gates embarked on a multi-day spree of vandalism, threats, and violence directed at his ex-girlfriend, culminating in Gates firing several shots in her direction. He was arrested and pleaded guilty to being a felon in possession of a firearm. The district court calculated the advisory Sentencing Guidelines range as 18–24 months in prison but sentenced Gates to 48 months, an upward variance Gates

challenges on appeal. Because Gates's sentence was procedurally sound and substantively reasonable, we affirm.

## I. Background

In September 2020, soon after Gates split up with his girlfriend, B.F., he began violently threatening her. On September 22, B.F. discovered a broken car window near the house where she was staying. Three days later, someone tried to set the house on fire. On September 28, one of the house's windows was broken; Gates was arrested nearby for disorderly conduct but released after a few hours.

Shortly after midnight on September 29, Gates called B.F. to say, "I posted bond, bitch. I'm on my way." She looked outside and saw Gates across the street. He fired five shots in her direction, then fled. Police arrived and stationed themselves nearby, but they left to pursue a car they suspected contained Gates. He was not in the car, and when the officers returned to their posts, B.F. informed them that Gates had called again, saying he was on her front porch. After Gates called a third time to say he was coming to "bust you down," a woman drove Gates past the house. He leaned out the passenger-side window and shot at B.F. again. Police stopped the car and arrested Gates.

Gates was charged with, and pleaded guilty to, being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The presentence report ("PSR") recounted Gates's extensive 25-year criminal history. Prior to the felon-in-possession charge, Gates had two juvenile adjudications, six misdemeanor and two felony convictions, three sets of pending charges, and seven other arrests. Additionally, in 2016, the mother of two of Gates's children received a one-year order

of protection against Gates based on domestic violence allegations. September 2020 saw an uptick in Gates's criminal activity. In the weeks before he shot at B.F., he was arrested for domestic violence and was charged with drunk driving.

Despite Gates's long criminal record, the Guidelines assigned him just one criminal history point, placing him in the lowest criminal history category. His offense level was 15, which incorporated a four-level increase for using a firearm in connection with a felony offense. The advisory Guidelines range was 18–24 months in prison. The government sought an upward variance to 60 months. Gates requested a within-Guidelines sentence, arguing that the Guidelines adequately took his criminal history and the circumstances of the offense into account. Gates also emphasized the importance of his children and his desire to return home to care for them.

After adopting the PSR's findings,[1] the district court determined that an upward variance was appropriate. The court found Gates's mitigating arguments unconvincing, particularly his claims about the importance of his children. The court said the most important thing a father can do for his children is to love their mother, but Gates was "not very good to their mother, at least the mother of two of them whom you were threatening."[2] The court cited several 18 U.S.C. § 3553(a)

---

[1] Gates did not object to the Guidelines-range calculation but raised one objection to the PSR's factual findings: Gates said he "shot more toward the air," not "directly at" B.F. The district court revised its finding to that Gates "fired in her direction." Gates made no further objection.

[2] The record is unclear on this point, but the court may have mistakenly believed B.F. was the mother of two of Gates's children. Gates does not argue that the possible misidentification constitutes reversible error,

sentencing factors to justify the upward variance. The court noted Gates's history and characteristics under § 3553(a)(1), observing that it was a "miracle" Gates wound up in the lowest criminal history category given his extensive criminal history; the court also mentioned the order of protection. The court explained that the nature and circumstances of the offense, § 3553(a)(1), further supported an upward variance because Gates's behavior represented a "pattern of escalating violence" and Gates acted "to terrorize" B.F. Last, the court referenced § 3553(a)(2)(A) and (C), explaining that an above-Guidelines sentence was necessary "to protect the public" and "to provide a reminder that this kind of behavior and this course on which you've been journeying is unacceptable." The court then sentenced Gates to 48 months in prison. Gates appealed.

## II. Discussion

We review a criminal sentence in two steps. We begin by reviewing the district court's sentencing procedures de novo. *United States v. Swank*, 37 F.4th 1331, 1334 (7th Cir. 2022). The district court must "(1) correctly calculate the applicable guidelines range; (2) give meaningful consideration to the § 3553(a) factors and any nonroutine sentencing arguments raised by the defense; and (3) state the factors on which the sentence is based." *Id.* (quoting *United States v. Greene*, 970 F.3d 831, 834 (7th Cir. 2020)). If the sentence is procedurally sound, we review its substantive reasonableness for abuse of discretion. *United States v. Walsh*, 47 F.4th 491, 496 (7th Cir. 2022). We do not presume an above-Guidelines sentence is

and our decision would not change if he did because the court did not rely on the victim's identity when deciding Gates's sentence.

unreasonable, *id.*, and we give deference to carefully explained variances, *United States v. Dickerson*, 42 F.4th 799, 806 (7th Cir. 2022).

Gates's procedural arguments lack merit. First, he argues that the district court's discussion of the 2016 order of protection shows that he was "sentenced, at least in significant part, on mere allegations and not facts found by any tribunal." This argument fails because Gates did not contest any of the facts related to the order, nor did he challenge the underlying allegations. The district court was thus entitled to rely on the PSR's findings about the order. Second, Gates argues that the district court was required to consider whether to impose an upward departure within the Guidelines framework before applying the § 3553(a) factors or, in the alternative, that we should adopt this requirement. But our precedent is clear: a court "may ground its justification by reference to the section 3553(a) factors alone and need not 'frame its explanation in terms of a departure from the guidelines range.'" *United States v. Gonzalez*, 3 F.4th 963, 966 (7th Cir. 2021) (quoting *United States v. Vasquez-Abarca*, 946 F.3d 990, 994 (7th Cir. 2020)).

Gates fares no better challenging the substance of his sentence. In several different ways, Gates argues that the district court abused its discretion by imposing an upward variance based on conduct the Guidelines already took into account. This argument misses the point of the § 3553(a) factors, which permit a district court to "deviate from the guidelines, so long as it offers an adequate statement of its reasons." *Gonzalez*, 3 F.4th at 965 (citations omitted). That is precisely what the court did here, thoroughly explaining why the § 3553(a) factors supported an upward variance. It noted that the lowest criminal history category did not capture Gates's history and

characteristics under § 3553(a)(1), pointing to "the frequency with which you have violated the law … in a serious fashion sometimes, and sometimes just an irritatingly frequent basis. You just never seem to get the message." Also under § 3553(a)(1), the court found that the nature and circumstances of the offense justified the upward variance. The court observed that "the last time you were incarcerated and you got out, you posted bond, you called and said 'I'm coming.' And you went with a firearm and you did the terrorizing acts." The court characterized Gates's conduct as "culminating, recurring, escalating violence …. That's what worries me because those things are not folded into the guidelines." It added that there was a heightened need "to protect the public" and "to provide a reminder that this kind of behavior … is unacceptable," referring to § 3553(a)(2)(A) and (C). This explanation was more than adequate; thus, the court did not abuse its discretion by sentencing Gates to 48 months in prison.

### III. Conclusion

The district court committed no procedural error and imposed a substantively reasonable sentence. Its judgment is therefore

AFFIRMED.