In the

# United States Court of Appeals

## For the Seventh Circuit

No. 24-2400

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROGER D. SNAKE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:22-cr-00019-wmc-1 — **William M. Conley**, *Judge.*

ARGUED APRIL 23, 2025 — DECIDED JUNE 9, 2025

Before HAMILTON, KIRSCH, and JACKSON-AKIWUMI, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Defendant-appellant Roger Snake pleaded guilty in federal court in 2011 to two counts of abusive sexual contact with minors. He completed his prison sentence in 2020 and began serving a lifetime term of supervised release. Snake repeatedly violated several conditions of his release, including unapproved and unsupervised contact with minors in his home. The district court revoked his

supervised release and sentenced him to 24 months in prison, well above the top of the range recommended in the policy statement in the Sentencing Guidelines. On appeal, Snake argues that the district court failed to explain adequately its reasons for imposing a sentence above that range.

Given our highly deferential review of sentences for violating a term of supervised release, and looking at the entire record, we affirm. We can understand why the court decided to go well above the policy statement's advisory range. But given the substance of the arguments here, we again encourage sentencing judges to ask the parties, before concluding a sentencing hearing, if they believe the court has sufficiently explained its decision so that arguable problems can be addressed on the spot rather than on appeal. See, e.g., *United States v. Donelli*, 747 F.3d 936, 940–41 (7th Cir. 2014), citing *United States v. Garcia-Segura*, 717 F.3d 566, 569 (7th Cir. 2013).

I. *Factual and Procedural Background*

Snake is an elder member of the Ho-Chunk tribe. In 2011, he pleaded guilty to two counts of abusive sexual contact of children under the age of 12 in the Northern Cheyenne Indian Reservation in Montana. See 18 U.S.C. §§ 1153(a), 2244(a)(5). He was sentenced to a prison term and a lifetime of supervised release. Upon release from prison in 2020, he relocated with court permission from Montana to the Western District of Wisconsin where he began his supervised release.

Snake's supervised release conditions required that he not be in the company of any minors or go to any places "primarily used" by minors without permission from his probation officer. He also could not leave the judicial district without permission from the court or his probation officer.

In October 2023, the probation office notified the district court in Wisconsin that Snake had violated several conditions of supervision. He had traveled outside the judicial district without permission on several occasions, including trips to New Mexico, Nebraska, and Minnesota. He also had had multiple contacts with minors without permission, such as when he attended at least eight tribal events where minors were present and gave a ride to a woman and her minor children. The district court did not take formal action at that time but held an off-the-record teleconference in which it reminded Snake that he could not go to any events where minors would be present without permission and supervision and that his actions needed to show that he understood the terms of his supervised release.

A few months after that conference, in June 2024, the probation office petitioned the district court to issue a summons to Snake based on new alleged violations of the conditions of supervision. The petition noted Snake's admissions to his probation officer that he had two contacts with minors without permission: He attended a Christmas brunch where minors were present, and he drove his minor grandson to school.

Most troubling, the officer had made an unscheduled home visit. He found Snake with three minors (two girls and one boy ranging in age from thirteen to fifteen) with no other adults present. The officer ordered Snake to have the children picked up by their father, who was "surprised" when told by Snake that he could not have unsupervised contact with minors. The district court issued a summons to Snake and scheduled a hearing on the charged violations.

Before the hearing, Snake's lawyer wrote a letter to the district court saying that Snake would "stipulate to the

violations." His lawyer asked the court to impose a home-detention term of three to nine months. Although Snake may have "failed to prioritize the Court's conditions over his community obligations," Snake's lawyer wrote, home detention would punish him appropriately without removing him completely from his tribe's community. Snake's lawyer added that because Snake was an elder within the tribe, his "congregation and clan rely on him for spiritual leadership."

At the hearing, Snake admitted the violations. The district court reiterated that Snake had violated his conditions of supervision, including what the court called "[p]erhaps the most egregious violation"—when Snake was found in his home by the probation officer alone with three young teenagers. The court added that "[t]his contact was made worse" by the fact that the children's father apparently had not been informed about Snake's conviction.

The court turned to the policy statement in the Sentencing Guidelines for supervised release violations. The court calculated an advisory range of three to nine months in prison based on a criminal history category of I and Grade C violations. See U.S.S.G. § 7B1.4. The court rejected Snake's argument that his elder leadership role in his tribe was a reason not to incarcerate him. The judge pointed out that Snake had used his elder status to engage in contact with minors in a manner "disturbingly similar" to the conduct for which he had previously been convicted: sexual abuse of young girls. The court asked: "Why would I consider his standing in the tribe where he presents a real risk of being a predator to the children in the tribe?"

In response to Snake's argument that home confinement would be an appropriate sanction given his role as tribe elder,

the court reiterated that Snake had committed "more egregious violations" within the tribe after being explicitly warned against violating his conditions of supervision. The court thus had "even greater concern" about Snake presenting himself as an elder leader because he had repeatedly refused to comply with restrictions on contact with the children of the tribe. The court found it "stunning" and a "complete disconnect" for counsel to argue that Snake's status as an elder would justify home detention when he "was found in his home with two minor females in close age to those he had abused for over a year."

Snake then testified. He described the incident at home with minor children as "unintentional," but he admitted that the probation officer's angry reaction resonated with him. When pressed by the court, he said he understood that his continued violations made it difficult to accept that he knew he could not have unchaperoned contact with minors and that his "actions" and not his words had to be considered. Going forward, he said, he would give priority to his legal obligations over requests from tribal members. But the court expressed concern that Snake's status as an elder continued to "be a cover"—that "the respect owed to elders … makes [him] seem less of a risk" to children in the tribe than he truly is. It defied belief, the court added, that—after repeated warnings—Snake was "sitting here again" or that he could have allowed himself to be alone with minor children in his home.

The court ultimately revoked Snake's supervised release and sentenced him to 24 months in prison—the statutory maximum—followed by a lifetime of supervised release. The court then said in a written order that a sentence above the policy-statement range was "reasonable and no greater than

necessary to achieve the statutory purposes of sentencing upon revocation given the egregiousness of [Snake's] violations." This sentence, said the court, aimed to hold Snake "accountable for his violations, protect the community and specifically minors, and promote specific and general deterrence."

The court did not ask the parties whether it had sufficiently explained its sentence or whether further elaboration of its reasons was necessary.

II. *Analysis*

Snake argues that the district court made a procedural error by failing to justify a sentence above the top of the policy-statement range. In his view, the court explained why it ordered prison rather than home detention but not why a sentence well above the policy-statement range was warranted.

In reviewing whether the district court sufficiently explained its sentence for a supervised release violation, we examine whether the record reflects that the district court considered both the guideline policy statements for violations of supervised release and the sentencing factors set forth in 18 U.S.C. § 3553(a), as applied to revocations of supervised release under 18 U.S.C. § 3583(e). See *United States v. Boultinghouse*, 784 F.3d 1163, 1177 (7th Cir. 2015). "A departure from the Guidelines, especially a significant one, must be carefully explained." *United States v. Snyder*, 635 F.3d 956, 961 (7th Cir. 2011).

If this were a sentencing for an original offense rather than for supervised release violations, the district court's explanation for an above-range sentence might not be deemed

enough. Our decision in *United States v. Lockwood*, 789 F.3d 773 (7th Cir. 2015), is illustrative in that regard. In *Lockwood*, we concluded that the district court's explanation for an original sentence well above the guideline range filled only one page of the sentencing transcript, did not refer to 18 U.S.C. § 3553, failed to explain how the court balanced those factors, and made no reference to the advisory guideline range at all. *Id.* at 782. These shortcomings underscored the flaw in the court's explanation: it failed to address "why that particular defendant requires a more severe punishment than most defendants." *Id.*

Snake points out here that, similarly, the district court did not refer explicitly to § 3553 (as applied to revocations of supervised release under § 3583(e)), nor did it detail how it balanced the relevant factors under § 3553. And although the court, in pronouncing the sentence, said that a 24-month sentence—above the policy-statement range—was "reasonable and no greater than necessary to achieve the statutory purposes of sentencing upon revocation," it did not explain specifically why a departure from the policy-statement range was warranted.

But we give greater deference to a sentencing court revoking supervised release than we do to a court imposing a sentence for an original offense. Even before the decision twenty years ago in *Booker v. United States*, 543 U.S. 220 (2005), sentencing courts had "more than usual flexibility" applying the Sentencing Commission's recommended policy statements in the revocation context. *Childs*, 39 F.4th at 945; *United States v. Salinas*, 365 F.3d 582, 588–89 (7th Cir. 2004) (before *Booker*, "the recommended range informs rather than cabins the exercise of the judge's discretion"). We have said

that appellate review of a sentence revoking supervised release is akin to the "narrowest judicial review of judgments" known. *United States v. Robertson*, 648 F.3d 858, 859 (7th Cir. 2011). Moreover, in evaluating the procedural reasonableness of a sentence after the revocation of supervised release, we review "the record as a whole" and not just the court's pronouncement of the sentence. *United States v. Martin*, 109 F.4th 985, 989 (7th Cir. 2024). Still, as we said more recently, a judge revoking supervised release must "say *something* that enables the appellate court to infer that [she] considered both sources of guidance," the policy statement and the statutory factors. *United States v. Childs*, 39 F.4th 941, 945 (7th Cir. 2022), quoting *Robertson*, 648 F.3d at 860.

When viewed through that highly deferential lens, the court adequately explained its sentence so that appellate review can be meaningful. The court correctly calculated, without objection, the policy-statement range based on Snake's criminal history category (I) and offense level (Grade C). See U.S.S.G. § 7B1.4. The court's language also tracked the language of the relevant statutory factors under § 3553(a) and § 3583(e), though without citing the statutes expressly.

The lack of specific statutory references does not trouble us. Those factors are the weekly if not daily fare of sentencing judges. We are confident this veteran district judge can recite them by heart. He alluded here to the nature and circumstances of Snake's offenses and violations (he had been convicted of abusing minor females for over a year, and on supervised release had violated conditions designed to protect children from similar abuse); his history and characteristics (repeated violations, including the "egregious" incident when he was discovered at home with minors, and

his status as one of the "most dangerous sex offenders to children"—offenders "intelligent enough to hide their predatory actions, who come up with excuses for their actions, while they're grooming children for additional sex offenses"); and the need for deterrence (to protect the community, "specifically minors"). It is also obvious that the court found Snake's violations especially egregious because he committed them after the judge's clear warnings in the earlier conference to address earlier violations without formal sanctions. Those are all sound and sufficient reasons for the above-range sentence here.

Citing our decision in *United States v. Snyder*, 635 F.3d 956, 961 (7th Cir. 2011), Snake argues that the district court failed to consider whether his sentence would create unwarranted sentencing disparities among defendants. In *Snyder*, we found that the district court failed to explain adequately its revocation sentence above the policy-statement range because it did not refer to the recommended range at all. *Snyder* distinguishes itself. We noted there that if the court had correctly calculated and carefully reviewed the policy-statement range, "we would be more confident that it also considered the need to avoid unwarranted disparities." *Id.*, citing *Gall v. United States*, 552 U.S. 38, 54 (2007). Unlike in *Snyder*, the district court here explicitly calculated the policy-statement range and made clear, both orally during the hearing and in its written order, that an above-range sentence was needed, particularly in light of the "egregiousness" of the violations.

Snake also argues that much of the district court's discussion at sentencing pertained to the choice between prison and home detention and not the length of his prison sentence. As noted, though, "we look to the whole transcript to consider

whether the district court applied the § 3553(a) factors appropriately." *United States v. Swank*, 37 F.4th 1331, 1334 (7th Cir. 2022). The court's comments here about Snake's offense conduct, history, and personal characteristics also pertain to the relevant sentencing factors under § 3553(a).

A final note: we again encourage district courts at sentencing, after they have pronounced a sentence and stated their reasons, to ask the parties whether they require any further elaboration of the reasons for the sentence. This step allows for correction of a potential procedural error on the spot, which "is preferable to correction after appellate review, a year or more of delay, and a new hearing after remand." *United States v. Donelli*, 747 F.3d 936, 941 (7th Cir. 2014), citing *United States v. Garcia-Segura*, 717 F.3d 566, 569 (7th Cir. 2013), and *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005).

AFFIRMED.