In the

# United States Court of Appeals

### For the Seventh Circuit

No. 23-2317

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DARKEL DESHAY MARTIN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:21-cr-30117 — **David W. Dugan**, *Judge.*

SUBMITTED FEBRUARY 14, 2024[1] — DECIDED JULY 31, 2024

Before SCUDDER, ST. EVE, and LEE, *Circuit Judges.*

LEE, *Circuit Judge*. After pleading guilty to possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1), Darkel Martin served his custodial sentence and began a three-year term of supervised release. Before long, the government

---

[1] We granted the joint motion to waive oral argument, and the appeal is therefore submitted on the briefs and the record. Fed. R. App. P. 34(a)(2)(C).

asked the district court to revoke Martin's supervised release and return him to prison, alleging that he had violated the terms of his supervised release in multiple ways. Martin ultimately admitted to committing several violations, and the district court revoked his supervised release and sentenced him to twenty months of imprisonment with one year of supervised release, which was within the United States Sentencing Guidelines's recommended range. On appeal, Martin argues that the district court procedurally erred because it failed to calculate his Guidelines range. He also contends that the court improperly relied on certain facts when determining his sentence upon revocation in violation of 18 U.S.C. § 3583(e). For the reasons below, we affirm.

## I.  Background

After completing a forty-eight-month custodial sentence, Martin commenced his three-year term of supervised release on April 29, 2021. Just six months later, on October 28, 2021, the government filed a petition to revoke, alleging numerous violations, including committing another crime, unlawfully possessing a controlled substance, and failing to participate in substance abuse and mental health treatment programs. The government alleged additional violations in an amended and second amended petition, filed on February 4, 2022, and November 9, 2022, respectively.

At his revocation and sentencing hearing on June 21, 2023, Martin admitted to multiple violations of his supervised release: unlawful possession of a controlled substance, failure to submit written reports to probation, knowingly leaving the federal judicial district without permission, failure to participate in a sex offense-specific assessment, and failure to attend substance abuse and mental health treatment sessions.

In preparation for sentencing, the U.S. Probation Office informed the district court that, because Martin's original offense was a Class C felony, the maximum term of imprisonment after revocation would be two years, while the maximum term of supervised release was three years less the term of imprisonment. *See* 18 U.S.C. § 3583(e)(3). Furthermore, pursuant to U.S.S.G. Chapter 7, Part B (which addresses probation and supervised release violations), the Probation Office considered the seriousness of the supervised release violations, as well as Martin's criminal history category, and recommended an advisory Guidelines range of eighteen to twenty months of imprisonment.[2] It also observed that, if the court decided to include a term of supervised release, the length of the term must not be more than three years minus the term of imprisonment imposed upon revocation.

At the revocation hearing, the district court first informed Martin about the consequences of admitting the supervised release violations, including the mandated revocation and custodial sentence that 18 U.S.C. § 3583(g) required for possessing a controlled substance while on supervised release. The court also reviewed with Martin the maximum statutory sentence that revocation would trigger and stated that, in determining the appropriate sentence, it would consider the sentencing range under Chapter 7 of the Guidelines as well as

---

[2] The Sentencing Commission elected to issue policy statements, rather than Guidelines, when it comes to revocation of probation and supervised release. These policy statements "are non-binding and meant to inform rather than cabin the exercise of the judge's discretion." *United States v. Dawson*, 980 F.3d 1156, 1161–62 (7th Cir. 2020) (quoting *United States v. Raney*, 842 F.3d 1041, 1044 (7th Cir. 2016)).

the sentencing factors in 18 U.S.C. § 3553(a). Martin acknowledged that he understood.

The government urged the court to impose a twelve-month custodial sentence followed by sixteen months of supervised release. In making its case, the government discussed Martin's extensive criminal background, the need to impress upon Martin a respect for the law, and the need to deter Martin from further criminal activity.

In mitigation, defense counsel presented Martin's brother, who testified about Martin's difficult upbringing and struggles with mental health and substance abuse. In counsel's view, Martin's compliance on bond seemed to be improving, and so he requested a sentence of time served (Martin had been arrested in Arizona on an unrelated offense and detained for nearly a year) with supervision to follow. Alternatively, counsel requested a custodial sentence of a year and a day followed by supervised release.

In the end, the district court granted the government's request to revoke Martin's supervised release. Turning to the sentence, the district court acknowledged the parties' arguments and explained its reasoning. The court pointed to Martin's repeated failure to comply with the supervised release conditions—particularly, his obligation to participate in treatment for his substance use and mental health struggles. The court went on to discuss Martin's disrespect for the law, the risk he posed to the community, his need for rehabilitative help, and his difficult personal history. After weighing these factors, the district court imposed a sentence of twenty months of imprisonment and one year of supervised release. The court then gave both parties an opportunity to voice any

reason why they believed the court's sentence should not be imposed; both parties declined.

Now, Martin argues that the district court committed two procedural errors that warrant resentencing. First, he claims that the district court failed to consider the applicable Guidelines range and policy statements when imposing his sentence. Second, Martin contends the district court erred by relying on the sentencing factors enumerated in 18 U.S.C. § 3553(a)(2)(A).

## II.  Standard of Review

We begin with a brief note on the standard of review. Typically, procedural challenges to a criminal sentence are reviewed *de novo*, and the district court's factual findings are reviewed for clear error. *United States v. Baldwin*, 68 F.4th 1070, 1074 (7th Cir. 2023). Where there is error, we go on to consider whether the error was harmless or whether resentencing is necessary. *United States v. Morris*, 775 F.3d 882, 885 (7th Cir. 2015).

Here, however, the government points out that Martin failed to raise below the arguments he advances now. As such, in its view, the appropriate standard of review is plain error. Martin agrees. But both parties fail to account for our recent decision in *United States v. Wood*, 31 F.4th 593, 597 (7th Cir. 2022).

In *Wood*, we observed that "[a] district court's explanation of its sentencing decision, regardless of whether it precedes or follows the announcement of the sentence itself, is a ruling." *Id*. at 597. And, because Federal Rule of Criminal Procedure 51(a) states that "[e]xceptions to rulings or orders of the court are unnecessary," a defendant who challenges the adequacy

of that explanation on appeal need not have raised the objection below. *Id.*; *accord United States v. Wilcher*, 91 F.4th 864, 871 (7th Cir. 2024). Here, Martin's appeal is premised entirely on the adequacy of the district court's explanation of its sentencing decision; therefore, our review of Martin's procedural challenges proceeds *de novo*.

## III. Analysis

### A. The Guidelines Range

When sentencing a defendant after a revocation of supervised release, a district judge "must consider both the Guidelines policy statements that prescribe the penalties for supervised release violations, *see* U.S.S.G. Chapter 7, Part B, as well as the statutory sentencing factors set forth in 18 U.S.C. § 3553(a), as applicable to revocations of supervised release, *see* 18 U.S.C. § 3583(e)." *United States v. Boultinghouse*, 784 F.3d 1163, 1177 (7th Cir. 2015). That said, a district court need not expressly address each and every point so long as it "say[s] something that enables the appellate court to infer that [the court] considered both sources of guidance." *Id.* (internal quotation marks omitted). This much is required even though "appellate review of a sentence for violating the terms of supervised release is highly deferential." *United States v. Robertson*, 648 F.3d 858, 859 (7th Cir. 2011) (noting that the sentencing judge must consider the § 3553(a) statutory sentencing factors and the Guidelines policy statements after revocation); *see United States v. Neal*, 512 F.3d 427, 438 (7th Cir. 2008). Finally, we keep in mind that a revocation sentence "within the advisory Guidelines range" requires "only a concise explanation by the court." *Boultinghouse*, 784 F.3d at 1178.

Martin first asserts that the district court committed procedural error by failing to consider Chapter 7 of the Guidelines, including his advisory Guidelines range under § 7B1.4. The government, for its part, acknowledges that the district court did not announce the Guidelines range during the hearing, but it believes that the totality of the sentencing record confirms that the court considered it.

At its core, Martin's argument rests on two points. First, the district court did not expressly announce the advisory Guidelines range at any point in the hearing. Second, the court said nothing explicitly about adopting the range the Probation Office had calculated in its sentencing recommendation.

The problem with this argument is that it ignores the rest of the record. To start, the district court *did* reference § 7B1.4 and the need to consider the Guidelines range, albeit in a general way, stating, "All right. I want to let you know as well that I have these suggestions or sentencing ranges that are available under United States Sentencing Guideline 7B1.4." What is more, the district court informed Martin that he would be admitting to several Grade B violations and a Grade C violation, as explained in the Probation Office's sentencing recommendation to the court.

But that is not all. Martin's recommended custodial Guidelines range was eighteen to twenty-four months, and the district court sentenced him to twenty months. These facts assure us that the district court understood the significance of Chapter 7 of the Guidelines and had reviewed the Probation Office's written recommendation, including the calculation of the advisory Guidelines range that it contained. *See United States v. Oliver*, 873 F.3d 601, 610–11 (7th Cir. 2017) (explaining

that when the district court imposes a within-Guidelines sentence and mentions the Probation Office's presentencing report, "this Court can rest assured that the district court was aware of the Guidelines range").

If there were any lingering question as to whether the district court considered the Guidelines calculation, the written record dispels any doubt. The district court docket contains a document entitled "Minutes of Hearing on Petition to Revoke Supervised Release," which states: "Court finds the most serious grade violation is a Grade B, Criminal History category is V and the imprisonment range is 18–24 months." Thus, the record as a whole demonstrates that the district court properly calculated and considered the advisory Guidelines range when imposing Martin's sentence.

## B. Section 3583(e)

Section 3553(a)(1) through (7) enumerate various factors a district judge must consider when fashioning a sentence in a criminal proceeding. Section 3553(a)(2), in particular, instructs the court to consider the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).[3]

---

[3] The other factors are: "the nature and circumstances of the offense; the defendant's history and characteristics; the need to deter criminal conduct, protect the public, and provide the defendant with training, medical care, or other correctional treatment; sentencing recommendations and policy statements from the Sentencing Commission; the need to avoid unwarranted sentencing disparities among similar defendants; and the need for victim restitution." *Dawson*, 980 F.3d at 1162 (citing 18 U.S.C. § 3553(a)).

Section 3583 governs supervised release, and § 3583(e) instructs courts on how to deal with violations of supervised release, including any resulting revocation and sentence. Specifically, § 3583(e) requires a court to consider many of the same factors that appear in § 3553(a), but conspicuously absent is any mention of § 3553(a)(2)(A).[4] Citing various statements the district court made during the hearing, Martin argues that the court erred by relying on two § 3553(a)(2)(A) factors when sentencing him—the need for a sentence to promote respect for the law and the need to provide just punishment for the offense.

Even a cursory reading of § 3553(a), however, reveals substantial overlap between the factors that appear in § 3553(a)(2)(A) and those that appear elsewhere in § 3553(a). For example, the seriousness of an offense, § 3553(a)(2)(A), informs its nature and circumstances, § 3553(a)(1). And promoting respect for the law, § 3553(a)(2)(A), is a way to deter further criminal conduct and protect the public from further crimes of the defendant, § 3553(a)(2)(B) and (C). *See United*

---

[4] Section 3583(e), entitled "Modification of Conditions or Revocation," authorizes the district court to, among other things, terminate a term of supervised release, modify the length of the term or any conditions, or revoke supervised release and impose an appropriate sentence "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." *Id.* The absence of § 3553(a)(2)(A) stands to reason. As we have previously explained, § 3583(e) and Chapter 7 of the Guidelines Manual "reflect the unique purpose of revocation sentences. The point is not to punish a defendant's violation as if it were a new federal crime, but rather to sanction the defendant's breach of trust—that is, his or her failure to comply with court-ordered conditions arising from the original conviction." *See Dawson*, 980 F.3d at 1162 (internal citation omitted).

*States v. Clay*, 752 F.3d 1106, 1108 (7th Cir. 2014). It is for this reason that we countenance a district court's discussion of § 3553(a)(2)(A) factors in the revocation context so long as the court "relies *primarily* on the factors listed in § 3583(e), including the nature and circumstances of the violations, the history and characteristics of the defendant, the need to protect the public, and the need for adequate deterrence." *Id.* (emphasis added); *see Dawson*, 980 F.3d at 1163 (affirming revocation sentence where district court "sentenced [defendant] primarily for his breach of trust to the court").

Notably, this is in keeping with the test we apply in the nonrevocation setting when we are asked to vacate a sentence because the district court relied on a proscribed factor. The test in such cases is whether the impermissible factor was the "driving force" behind the district court's sentencing decision. *See United States v. Shaw*, 39 F.4th 450, 457 (7th Cir. 2022).

After reviewing the record, we are persuaded that, when tailoring Martin's post-revocation sentence, the district court relied primarily on the factors identified in § 3583(e) and that the factors in § 3553(a)(2)(A) were not its driving force. For example, although the court noted that it considers whether a defendant respects the law, it quickly explained that it did so because a "good healthy respect for the law is the first step towards" making sure that a defendant does not reoffend (thereby promoting deterrence and public safety). The court then proceeded to discuss the nature of Martin's violations, focusing on his refusal to participate in mental health and substance abuse treatment despite the serious need for such treatment.

From there, the court discussed the importance of considering Martin's personal background, observing that his

brother "did a fine job explaining the hardships of [Martin's] youth." But the court again stressed how critical it was for Martin to comply with the supervised release conditions and to accept the help from his treatment providers, which were offered to him "again and again" despite his refusal to participate. Successfully receiving such treatment, the court observed, would help Martin transition successfully "from imprisonment to the real world." Finally, the court remarked that Martin's criminal history indicated "a risk to the community" and that without the court's intervention there was no reason to believe that Martin was "going to get any better."

The record demonstrates that the district court's sentencing decision was driven primarily by the factors identified in § 3583(e). As such, we see no error.

## IV. Conclusion

For these reasons, the judgment of the district court is AFFIRMED.