In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 23-3086

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DEVONTAE MARTIN,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:18-cr-00021-TLS-APR-5 — **Philip P. Simon**, *Judge.*

———————————

ARGUED OCTOBER 1, 2024 — DECIDED DECEMBER 2, 2024

———————————

Before BRENNAN, SCUDDER, and MALDONADO, *Circuit Judges.*

SCUDDER, *Circuit Judge*. Devontae Martin received a life sentence for his role in a July 2017 federal drug offense in which a fellow drug dealer shot and killed a local car wash owner believed to possess a substantial stash of cocaine. We have little trouble affirming Martin's sentence. But we do so by undertaking our own independent review of the sentencing hearing, rejecting the government's invitation to review

only for plain error. We have held many times over in recent years that a defendant like Martin need not object at sentencing to an error believed to occur during sentencing itself to preserve the issue for *de novo* review on appeal. See, *e.g.*, *United States v. Wood*, 31 F.4th 593 (7th Cir. 2022); *United States v. Wilcher*, 91 F.4th 864 (7th Cir. 2024); *United States v. Martin*, 109 F.4th 985 (7th Cir. 2024). That is exactly the circumstance here. We are running low on patience with the lack of adherence to our precedent in this area.

## I

Devontae Martin was a key player in Teddia Caldwell's drug distribution operation in Gary, Indiana. Caldwell owned a car wash in Gary. Upon learning that another local car wash owner, Kevin Hood, might have a large stash of drugs and money, Caldwell proposed a robbery. Martin told Caldwell he and "his people would get on it." His people included Taquan Clarke. Martin's plan was simple: he and Clarke would show up at Hood's car wash, "kidnap him, and hold him for ransom" until he turned over the drugs.

On July 28, 2017, Martin, armed with an AK-47 assault rifle, and Clarke, carrying a pistol, drove to Hood's car wash. An employee, likely presuming that the two men were there for a wash, helped guide them into the wash bay. From there, however, Martin and Clarke suddenly jumped out of their SUV brandishing guns. Martin shouted at bystanders to get down and then used the AK-47 to strike the employee who had just helped him into the car wash in the head. Martin and Clarke then attempted to kick down the door to the office where they believed Hood was working. Hood reacted by running and a chase ensued, leading to Martin catching and tussling with Hood in the parking lot. Two shots rang out

from Martin's AK-47 during the struggle. The tangle ended when Clarke approached and shot Hood in the head, killing him.

Federal drug and firearms charges followed, and Martin chose to go to trial. A jury found him guilty of both a drug conspiracy charge (21 U.S.C. § 846) and carrying, using, and discharging a firearm during and in connection with the drug offense (18 U.S.C. § 924(c), (j)).

Everyone agreed at sentencing that Martin faced an advisory range of life imprisonment under the U.S. Sentencing Guidelines. The district court applied the factors in 18 U.S.C. § 3553(a), and especially underscored the gravity of Martin's offense conduct, including his "shockingly violent" decision to take an AK-47 to a public place surrounded by ordinary people "going about their day" to confront Kevin Hood. On the mitigating side, the district court acknowledged Martin's difficult upbringing but, in the end, declined to vary downward from the advisory range of life imprisonment.

Martin now appeals, challenging his sentence on two grounds.

## II

*First*, Martin contends that the district court procedurally erred by believing it could impose a sentence of less than life imprisonment only by identifying a departure ground expressly authorized by the Guidelines. The sentencing transcript shows otherwise, however.

Early in the proceeding, the district court asked the parties whether a sentence of less than life might be justified based on a Guidelines application note stating that a "downward departure may be warranted" in cases of felony murder, "[i]f

the defendant did not cause the death intentionally or know-
ingly." See U.S.S.G. § 2A1.1 cmt. n.2(B). After hearing the par-
ties' perspectives, the district court decided to impose a life
sentence. A full and fair reading of the transcript does not
show that the district court believed it lacked authority or dis-
cretion beyond that recognized in application note 2(B). To
the contrary, the transcript shows that the district court un-
derstood that the advisory guideline range provided only a
"starting point" for determining an appropriate sentence. The
district judge then proceeded to consider and apply the fac-
tors enumerated in 18 U.S.C. § 3553(a), ultimately explaining
that, after considering all aggravating and mitigating factors
and "contemplat[ing]" the Guidelines application note, the
court was "exercising [its] discretion to not depart in the case
or to vary, either."

On this record, we cannot conclude that the district court
construed the Sentencing Guidelines generally or application
note 2(B) specifically as limiting its discretion to sentence
Martin to something less than life imprisonment.

*Second*, Martin contends that the district court sentenced
him based on inaccurate information. He sees the ultimate
sentencing decision as rooted in findings that he both fired his
AK-47 during the struggle with Hood and indeed intended to
commit murder. Here, too, the sentencing transcript shows
otherwise. Foremost, while the government argued that Mar-
tin fired a shot and sought to kill Hood, the district court
never credited those contentions. Indeed, the court was care-
ful to observe no more than that "shots [ ] were fired by [the
AK-47]"—a statement that stopped short of finding that Mar-
tin affirmatively or intentionally pulled the trigger. Nor do we
see anything in the sentencing transcript showing or

suggesting the district court determined that Martin intended to kill Hood when the robbery plan went bad. The record, in short, does not support the contention that the district court sentenced Martin based on inaccurate information. See *United States v. Gamble*, 969 F.3d 718, 722 (7th Cir. 2020).

## III

In no way do we discount the gravity of Martin's life sentence. But having taken our own fresh and independent look at the sentencing proceeding in the district court—as *de novo* review requires we do—we are confident no error occurred. We pause on this point because the government insists that our review should be for plain error. In doing so, the government disregards three recent holdings explaining that a defendant like Devontae Martin need not object at sentencing to an error believed to occur during sentencing itself to preserve the issue for *de novo* review on appeal.

By now our precedent is crystal clear on the point. In *United States v. Wood*, we explained that "Rule 51(a) states in no uncertain terms: '[e]xceptions to rulings or orders of the court are unnecessary' to preserve a basis for appeal." 31 F.4th at 597 (quoting Fed. R. Crim. P. 51(a)). So when the "grounds for appeal existed prior to and separate from the district court's ultimate ruling," a party waives their claim of error if they fail to raise it in the district court. *Id.* at 598. When the error is "created by the district court's ruling itself," however, a defendant is not required to contemporaneously object to the error to preserve it for *de novo* review. *Id.*

Lest there be any doubt, we reinforced the point in plain, practical terms. "A district court's explanation of its sentencing decision, regardless of whether it precedes or

follows the announcement of the sentence itself," we observed, "is a ruling to which an exception is not required." *Id.* at 597. Such a ruling or determination does not require a defendant to object—either by interrupting the sentencing judge mid-explanation or by raising the issue at some point before the proceeding concludes—to preserve a basis for error on appeal. See *id.* at 598–99.

We returned to the same issue two years later in *United States v. Wilcher*, again rejecting the government's invitation to review for plain error because Joseph Wilcher's contentions on appeal—that the district court relied on an improper consideration in determining his sentence and failed to consider his mitigation arguments—arose out of the district court's sentencing determination and accompanying explanation. 91 F.4th at 870. Our review, then, was *de novo* and not merely for plain error.

So too in *United States v. Martin*, decided just six months after *Wilcher*. 109 F.4th 985. There the government—seeming to resist our holding in *Wood*—pressed us to review Darkel Martin's challenge to alleged procedural errors in the sentencing decision for plain error. See *id.* at 988. Returning to *Wood*, we observed that because Martin premised his claims "entirely on the adequacy of the district court's explanation of its sentencing decision," our review was *de novo. Id.*

*Wood*, *Wilcher*, and *Martin* reflect the law of this circuit. Unless and until the full court chooses to revisit these cases, all parties—the government included—must follow them.

With these closing observations, we AFFIRM.