In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 24-1120

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DANIEL STEWART,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:15-cr-00024-JPH-TAB-1 — **James P. Hanlon**, *Judge.*

———————————

ARGUED MAY 29, 2025 — DECIDED AUGUST 4, 2025

———————————

Before EASTERBROOK, BRENNAN, and SCUDDER, *Circuit Judges.*

BRENNAN, *Circuit Judge.* A jury found Daniel Stewart guilty of drug-distribution, firearm, and financial crimes. He was initially sentenced to life in prison plus five years, but the district court later vacated that sentence. It then imposed a 360-month term of imprisonment, to which Stewart now objects on several grounds. We reject his arguments and affirm.

**I**

What started as a traffic incident in early 2015 led to a massive drug bust. Indianapolis Metropolitan Police stopped Stewart for driving through a red light and then searched his car. They found a handgun, more than $9,000 in cash, and over 800 grams of illegal narcotics. Officers later searched his home and found even more illegal drugs, almost $500,000 in cash, as well as five additional firearms. After Stewart's arrest, investigators discovered that he had been laundering the proceeds from his significant drug operation through bank accounts associated with sham businesses.

Stewart was convicted in November 2016 of possessing with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1) (Count 1); possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1) (Count 2); possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count 3); engaging in monetary transactions in property derived from an unlawful activity in violation of 18 U.S.C. § 1957 (Count 4); and money laundering in violation of 18 U.S.C. § 1956(a)(1) (Counts 5 and 6).

At that time, Count 1 carried with it an enhanced mandatory life sentence for any defendant who had at least two prior felony drug offenses. *See Harris v. United States*, 13 F.4th 623, 625 (7th Cir. 2021). Five of Stewart's Indiana convictions qualified. He was also subject to an enhanced 15-year-minimum sentence for Count 2, which the district court ordered he serve concurrently with his life sentence. 18 U.S.C. § 924(e)(1) (enhancement based on "three previous convictions" for "serious drug offense[s]"). Count 3 mandated a consecutive 60-month, or five-year, sentence. *Id.* § 924(c)(1)(A)(i). Counts 4 through 6 did not carry mandatory minimums, so the district

court imposed 10 years' imprisonment apiece, which Stewart would serve concurrently with his other sentences. Together, his final sentence was thus life plus five years.

Stewart appealed his convictions, but we affirmed across the board. *United States v. Stewart*, 902 F.3d 664 (7th Cir. 2018). He then moved for postconviction relief under 28 U.S.C. § 2255. Among other things, he cited intervening caselaw to argue that his prior Indiana drug convictions no longer qualified him for a sentence enhancement on either Count 1 or Count 2. *See, e.g.*, *United States v. De La Torre*, 940 F.3d 938 (7th Cir. 2019). The government conceded the point.

The district court accordingly ordered resentencing. This time, all agreed Count 1 would carry a sentencing range of 10 years to life, rather than a mandatory life term. 21 U.S.C. § 841(b). And on Count 2, Stewart would be subject to only a 10-year-maximum sentence. 18 U.S.C. § 924(a)(2) (2006).

The Probation Department prepared a new presentence investigation report (PSR) for Stewart's resentencing, which included an advisory sentencing range. Relevant here, the PSR reported that he qualified as a career offender under the United States Sentencing Guidelines. *See* U.S. SENT'G GUIDELINES MANUAL § 4B1.1. Probation, adhering to the career-offender Guideline and the Sentencing Commission's corresponding application notes, arrived at a final advisory range of 420 months to life in prison. The district court adopted that range without objection.

Ultimately, though, the court sentenced Stewart to 360 months' imprisonment. It attributed the below-Guidelines sentence to Stewart's "substantial efforts towards rehabilitation and bettering himself" since his initial sentence. But it

weighed those efforts against the "overwhelming" evidence of his "very dangerous" crimes and his failure to accept responsibility.

No longer bound by a mandatory life sentence, the district court first imposed 300 months' imprisonment for Count 1. It sentenced Stewart to the lower 10-year, or 120-month, statutory maximum for Count 2, which would run concurrently with the other counts. The sentences for Counts 3 and 4 did not change. The former still mandated a consecutive 60 months. As for the latter, the district court again imposed a 120-month sentence to run concurrently with the others. The court did, however, increase Stewart's sentences for Counts 5 and 6 (the money laundering counts) from 120 months' to 240 months' imprisonment, respectively. But that made no substantive difference, as those ran concurrently with his otherwise longer Count 1 sentence. The result was, again, a final sentence of 360 months.

Stewart appeals, seeking another resentencing. His main contention is that the Probation Department—and by extension the district court—miscalculated his sentencing range under the career-offender Guideline. He also faults the district court for misunderstanding the extent to which it could consider his rehabilitation when fashioning a new sentence and for increasing his money laundering sentences without explanation.

## II

Stewart's primary argument on appeal pertains to the career-offender Guideline. *See* U.S.S.G. § 4B1.1. He faults the probation officer who prepared the PSR for misapplying § 4B1.1 when calculating his 420-months-to-life advisory

sentencing range and, consequently, the district court for adopting the PSR. Stewart acknowledges he inadvertently failed to object to the Guidelines range. So, we review the district court's calculation only for plain error. *United States v. Truett*, 109 F.4th 996, 1002 (7th Cir. 2024) (reviewing a "district court's Guideline calculation for plain error because" the defendant "did not raise [an] objection to the district court, and the failure to object appear[ed] inadvertent").

## A

We start with the text of the career-offender Guideline. Subsection (a) defines "career offender" and thus serves as a gateway to the rest of the Guideline:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).

When the gateway subsection is satisfied, subsections (b) and (c) of the Guideline provide the means of calculating a career offender's advisory sentencing range. Subsection (b) serves as the default provision:

> Except as provided in subsection (c), if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level

> from the table in this subsection shall apply. A career offender's criminal history category in every case under this subsection shall be Category VI.

*Id.* § 4B1.1(b). The table referred to in subsection (b) assigns the career offender an offense level depending on the statutory maximum for his controlled-substance or crime-of-violence offense. Greater statutory maximums are associated with correspondingly higher offense levels. *Id.*

Subsection (c) contains exceptions to the default provision. The exceptions apply when the career offender has been convicted of "using or carrying a firearm during and in relation to, or possessing a firearm in furtherance of, any federal crime of violence or drug trafficking crime" in violation of 18 U.S.C. § 924(c). *United States v. Davis*, 588 U.S. 445, 449 (2019) (internal quotations omitted).[1] Relevant here is subsection (c)(2):

> In the case of multiple counts of conviction in which at least one of the counts is a conviction other than a conviction for 18 U.S.C. § 924(c) …, the guideline range shall be the greater of—
>
> (A) the guideline range that results by adding the mandatory minimum consecutive penalty required by the 18 U.S.C. § 924(c) … count(s) to the minimum and the maximum of the otherwise applicable guideline range determined for the count(s) of conviction

---

[1] Subsection (c) also applies when the career offender was convicted of using restricted ammunition in violation of 18 U.S.C. § 929(a). *See* U.S.S.G. § 4B1.1(c). For ease of reading, though, we have omitted any reference to § 929(a), as Stewart was convicted of only a § 924(c) offense.

other than the 18 U.S.C. § 924(c) … count(s);
and

(B) the guideline range determined using the
table in subsection (c)(3).

U.S.S.G. § 4B1.1(c)(2)(A)–(B). The table referred to in this subsection assigns the career offender a Guidelines range that depends on his acceptance of responsibility—or lack thereof. *See id.* § 3E1.1.

**B**

We turn now to the district court's Guidelines calculation. The court first concluded that Stewart met the career-offender definition in § 4B1.1's gateway provision, subsection (a). On this Stewart agrees. He was at least 18 years old when he violated 21 U.S.C. § 841(a)(1) for possessing with intent to distribute a controlled substance (Count 1), and he had at least two earlier controlled-substance felony convictions. Stewart also qualified as a career offender on account of his 18 U.S.C. § 924(c) conviction (Count 3). *See* U.S.S.G. § 4B1.2 cmt. n.1 ("A violation of 18 U.S.C. § 924(c) … is a 'crime of violence' or a 'controlled substance offense' if the offense of conviction established that the underlying offense was a 'crime of violence' or a 'controlled substance offense.'").

The district court thus proceeded to subsections (b) and (c). Recall that subsection (b) acts as the default provision. It controls "[e]xcept as provided in subsection (c)." *Id.* § 4B1.1(b). The court correctly concluded that subsection (c)(2)'s exception applied to Stewart because this case involves "multiple counts of conviction in which" one, but not all, of the convictions is for a § 924(c) offense. *Id.* § 4B1.1(c)(2). Here, too, Stewart agrees.

The subsection (c)(2) exception requires a court to calculate two comparator ranges, the greater of which becomes the career offender's advisory Guidelines range. The easier of the two calculations directs the court to the acceptance of responsibility table in subsection (c)(3). *Id.* § 4B1.1(c)(2)(B). All agree Stewart did not accept responsibility, resulting in a comparator range of 360 months to life. *Id.* § 4B1.1(c)(3).

Central to this appeal is how to correctly calculate the other comparator range. The Guideline mandates that the court "add[] the mandatory minimum consecutive penalty required by" the career offender's § 924(c) count "to the minimum and the maximum of the otherwise applicable guideline range determined for the count(s) of conviction other than the" § 924(c) count. *Id.* § 4B1.1(c)(2)(A).

The mandatory minimum for a § 924(c) offense is 60 months. 18 U.S.C. § 924(c)(1)(A)(i). That leaves only the "otherwise applicable guideline range." The Guidelines do not define that phrase. But the Sentencing Commission's application notes do. According to the Commission, "[i]f the count(s) of conviction other than the 18 U.S.C. § 924(c) … count(s) does not qualify the defendant as a career offender, the otherwise appliable guideline range" is just the range that would apply if not for the defendant's career-offender status. U.S.S.G. § 4B1.1 cmt. n.3(C)(i); *see also id.* chs. 2–3 (computing offense level); *id.* §§ 4A1.1, 4A1.2 (computing criminal history category); *id.* ch. 5, pt. A (computing Guidelines range). But "[i]f the count(s) of conviction other than the 18 U.S.C. § 924(c) … count(s)" still "qualifies the defendant as a career offender, the otherwise applicable guideline range for that count(s) is the guideline range determined for the count(s) under § 4B1.1(a) and (b)." *Id.* § 4B1.1 cmt. n.3(C)(ii).

To put it simply, the relevant application note instructs courts to ignore any § 924(c) convictions. If a defendant continues to meet the definition of a career offender, then the career-offender Guideline remains relevant. If not, the Guideline is no longer relevant.

Consistent with that approach, the district court here correctly determined that, putting aside Stewart's § 924(c) conviction, he still qualified as a career offender because of his controlled-substance offense. With the subsection (a) gateway satisfied again, the court could proceed to subsections (b) and (c). But of course, subsection (c) could not apply this time because the court had to blind itself to Stewart's § 924(c) conviction. So, the subsection (b) default applied.

As set out above, subsection (b) instructs courts to calculate a sentencing range using a criminal history category of VI and the higher of the defendant's "otherwise applicable" offense level and the offense level calculated in the subsection's table. *Id.* § 4B1.1(b). Stewart's "otherwise applicable" offense level—the offense level but for his career-offender status—is 34. But because the statutory maximum for his controlled-substance offense is life imprisonment, subsection (b)'s table provided the greater offense level: 37. *Id.*; *id.* § 4B1.1 cmt. n.2; 21 U.S.C. § 841(b)(1)(A). An offense level of 37 and criminal history category of VI produced for the district court a Guidelines range of 360 months to life. U.S.S.G. ch. 5, pt. A.

Recall, that range was calculated for purposes of comparison under subsection (c)(2). Returning there, the court had to select the greater of:

- the range it just computed (360 months to life) plus "the mandatory minimum

consecutive penalty required by" Stewart's § 924(c) conviction (again, 60 months); and

- ▪ the range from subsection (c)'s table (as explained, 360 months to life).

*Id.* § 4B1.1(c)(2)(A)–(B). In the final comparison, then, the court had to choose the greater of 420 months to life and 360 months to life. Based on these calculations, it accurately selected the former.

## C

Stewart contends the district court calculated incorrectly. Specifically, he disagrees with the Sentencing Commission's application note on which the court relied to reach his "otherwise applicable guideline range" for the subsection (c)(2) comparison. *See id.* § 4B1.1 cmt. n.3(C). Stewart faces an uphill battle, though, because a court must abide by a relevant application note "unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of," the applicable Guideline. *Stinson v. United States*, 508 U.S. 36, 38 (1993); *see also United States v. Smith*, 989 F.3d 575, 584 (7th Cir. 2021) (same). Undeterred, he argues that the application note contradicts § 4B1.1's plain text.

To Stewart, the Commission's commentary on § 4B1.1 impermissibly directed the district court to apply both the subsection (b) default provision *and* a subsection (c) exception to arrive at his Guidelines range. Remember, the relevant application note says—when calculating a sentencing range under subsection (c)(2)—to put aside a defendant's § 924(c) conviction. If after doing so a defendant remains a career offender, the court should then rely on subsection (b) to determine the "otherwise applicable guideline range" for purposes of

comparing to the range from subsection (c)'s table. U.S.S.G. § 4B1.1 cmt. n.3(C)(ii). In Stewart's view, however, the plain text of the career-offender Guideline permits a court to rely on only subsection (b) or (c)—not both.

His position largely hinges on subsection (b)'s use of the phrase "[e]xcept as provided in subsection (c)." *Id.* § 4B1.1(b). The Supreme Court has stated that "[t]housands of statutory provisions use the phrase 'except as provided in …' followed by a cross-reference in order to indicate that one rule should prevail over another in any circumstance in which the two conflict." *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416, 428 (2018). From this, Stewart argues that because the subsection (c)(2) exception prevailed here, the district court was barred from resorting back to the subsection (b) default provision at any point in the calculation.

That leaves the issue of how to calculate "the otherwise applicable guideline range" for defendants, like Stewart, that qualify as career offenders even after ignoring any § 924(c) convictions. To him, the presumption of consistent usage provides the answer. ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 170 (2012) ("A word or phrase is presumed to bear the same meaning throughout a text[.]"). Both subsections (b) and (c) use the words "otherwise applicable." *Compare* U.S.S.G. § 4B1.1(b), *with id.* § 4B1.1(c)(2)(A). In subsection (b), "otherwise applicable" refers to the defendant's offense level but for his career-offender status. So, Stewart says, in subsection (c), "the otherwise applicable guideline range" must refer to the defendant's range if not for his career-offender status.

If Stewart is correct, his final Guidelines range would have been 360 months to life, not 420 months to life. Return to the

subsection (c)(2) exception. Again, the district court must identify the greater of (A) "the otherwise applicable guideline range determined for the count(s) of conviction other than the" § 924(c) count plus the 60-month mandatory minimum and (B) the Guidelines range calculated in subsection (c)'s table—for Stewart, 360 months to life. *Id.* § 4B1.1(c)(2)(A)–(B). Applying Stewart's approach, if he were not a career offender, his offense level would be 34 and his criminal history category would be VI. His "otherwise applicable guideline range" would accordingly be 262 to 327 months. *Id.* ch. 5, pt. A. Accounting for the additional 60-month mandatory minimum, the range used for comparison in subsection (c)(2) would be 322 to 387 months. Because 360 months to life is the greater of the two ranges, according to Stewart, that is the one the court should have chosen in the final comparison.

## D

Stewart's textual argument falters out of the gate. The district court's approach—based on the relevant application note—did not, as he contends, conflict with the Supreme Court's statement in *Cyan* about the meaning of "except as provided." Indeed, the district court's approach was consistent with the Supreme Court's rather unremarkable observation in that case: When an "except as provided" provision precedes a cross-referenced provision, and the two conflict, the latter provision normally prevails. *Cyan,* 583 U.S. at 428.

The ordinary meaning of "except as" confirms that to be true. The phrase means "unless." *See Except as*, GARNER'S DICTIONARY OF LEGAL USAGE (3d ed. 2011). The subsection (b) default provision could read: "Unless provided in subsection (c), subsection (b) controls." Or to put it even more simply:

"Unless subsection (c) applies, subsection (b) applies." Each formulation "indicate[s] that one rule should prevail over another in any circumstance in which the two" provisions "conflict." *Cyan*, 583 U.S. at 428.

Here, after concluding that Stewart qualified as a career offender under the subsection (a) gateway, the district court correctly interpreted "[e]xcept as provided in subsection (c)" to mean that the subsection (b) default would apply *unless* a subsection (c) exception did. U.S.S.G. § 4B1.1(b). And because an exception applied, the court calculated Stewart's Guidelines range under subsection (c)(2).

Stewart's textual argument ultimately goes too far. He says the district court had to completely blind itself to subsection (b) once it decided subsection (c) governed. But that position runs headlong into the Supreme Court's more recent guidance on the meaning of "except as provided" in *Atlantic Richfield Co. v. Christian*, 590 U.S. 1 (2020). There, the Court explained that "[s]uch clauses explain what happens in the case of a clash" between two provisions, "but they do not otherwise expand or contract the scope of either provision by implication." *Id.* at 16.

Stewart's reading of the career-offender Guideline would contract the scope of subsection (b) by making it irrelevant once a district court decides that subsection (c) applies. Yet subsection (c) tells courts to determine the "otherwise applicable guideline range determined for the count(s) of conviction other than the" § 924(c) count for purposes of comparison. U.S.S.G. § 4B1.1(c)(2)(A). Because Stewart would still be a career offender absent his § 924(c) conviction, his Guidelines range would otherwise be dictated by § 4B1.1(b). We cannot "contract the scope" of subsection (b) by reading it out of the

Guideline any time subsection (c) applies. *See Atl. Richfield*, 590 U.S. at 16. The Commission's application note avoids this contraction problem by directing courts back to subsection (b) when—putting aside any § 924(c) convictions—the defendant remains a career offender. U.S.S.G. § 4B1.1 cmt. n.3(C)(ii).

Stewart's resort to the presumption of consistent usage does not help him. As explained, he points out that "otherwise applicable offense level" in subsection (b) means "the offense level that would apply if the defendant were *not* a career offender." Opening Br. at 24 (internal quotation omitted). The use of "otherwise applicable [Guideline] range" in subsection (c), he continues, must mean "the guideline range that would apply without a career-offender enhancement." *Id.*

For one, the only words shared between the two provisions are "otherwise applicable." But in subsection (b), "otherwise applicable" refers to an "offense level," U.S.S.G. § 4B1.1(b), whereas in subsection (c), "otherwise applicable" refers to a "guideline range." *Id.* § 4B1.1(c)(2)(A). So, Stewart's premise—that these are repeated phrases—is weak. For another, the presumption of consistent usage "canon is particularly defeasible by context." SCALIA & GARNER, *supra*, at 171. In other words, it can be defeated when the phrase at issue is interpreted in light of its surroundings. Read as a whole, subsection (c) demands that a court ignore only "the 18 U.S.C. § 924(c) … count(s)" when calculating "the otherwise applicable guideline range." U.S.S.G. § 4B1.1(c)(2)(A). It does not, as Stewart wishes, require a court to blind itself to subsection (b), which remains eminently relevant for determining the Guidelines range of a career offender who does not have a § 924(c) conviction.

Consistent with the Guideline's text, the relevant application note also instructs courts to blind themselves only to § 924(c) convictions. If, putting those convictions aside, a defendant remains a career offender, the court must calculate his Guidelines range as if he is a career offender without § 924(c) convictions. *Id.* § 4B1.1 cmt. n.3(C)(ii). But if the defendant does not still qualify as a career offender, the note instructs the court to calculate his Guidelines range as if he were not a career offender. *Id.* § 4B1.1 cmt. n.3(C)(i).

All told, the Commission offers a far more "reasonable understanding of the Guideline" than Stewart. *United States v. Nitzkin*, 37 F.4th 1290, 1291 (7th Cir. 2022). At the very least, the relevant application note does not amount to a "plainly erroneous reading of" the career-offender Guideline. *United States v. White*, 97 F.4th 532, 537 (7th Cir. 2024) (quoting *Stinson*, 508 U.S. at 38). Courts must accordingly afford it "controlling weight." *Id.* The district court, having faithfully applied the application note, did not err, let alone plainly err.[2]

### III

The two additional errors Stewart raises on appeal require less explanation. First, he claims the district court misunderstood its discretion under federal law to consider his rehabilitation when fashioning a new sentence. Second, Stewart faults the court for failing to explain why it increased his

---

[2] Stewart alternatively argues that the deference we give to the Commission's application notes under *Stinson* runs afoul of the Supreme Court's more recent decision in *Kisor v. Wilkie*, 588 U.S. 558 (2019). There, the Court clarified the standard for deferring to an agency's interpretation of an ambiguous regulation. *Id.* at 574–79. But, as Stewart concedes, circuit precedent forecloses that argument. *White*, 97 F.4th at 535 ("*Kisor* did not disturb *Stinson* or our circuit precedent.").

sentences on the money laundering counts. As the parties agree, because both alleged errors "were created by the district court in the ruling itself," our review is de novo. *United States v. Wood*, 31 F.4th 593, 599 (7th Cir. 2022); *United States v. Martin*, 122 F.4th 286, 289–90 (7th Cir. 2024); FED. R. CRIM. P. 51(a).[3]

## A

We begin with Stewart's contention that the district court was unaware of the extent of its discretion to consider his rehabilitation at resentencing.

The sentencing factors direct courts to consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For a time, some courts understood § 3553(a)(6) to bar any consideration at

---

[3] The Supreme Court recently made a "few observations about appellate review" in response to an argument offered by the government in *Esteras v. United States*, 145 S. Ct. 2031, 2045 (2025). The Court stated that a defendant's failure to object to a district court "impermissibly relying on [18 U.S.C.] § 3553(a)(2)(A)" at a revocation hearing would result in plain-error review on appeal. *Id.*

The Supreme Court was not discussing Federal Rule of Criminal Procedure 51(a), so we do not understand it to have upset our "crystal clear" precedent on that rule. *Martin*, 122 F.4th at 289. In *Esteras* the Court was concerned with the consequences of a defendant's failure to object. 145 S. Ct. at 2045 (citing FED. R. CRIM. P. 52(b)). Rule 51(a), however, does "not require a litigant to complain about a judicial choice after it has been made. Such a complaint is properly called, not an objection, but an exception. The rule about exceptions is explicit: 'Exceptions to rulings or orders of the court are unnecessary.'" *United States v. Bartlett*, 567 F.3d 901, 910 (7th Cir. 2009) (quoting FED. R. CRIM. P. 51(a)). So, Rule 51(a) controls the standard of review here.

resentencing of a defendant's efforts to rehabilitate. Those courts deemed it unfair to credit one defendant for his post-sentencing progress when a similarly situated defendant—without the chance of resentencing—would not receive a similar reward.

The Supreme Court rejected that reasoning in *Pepper v. United States*, 562 U.S. 476 (2011). It acknowledged that permitting district courts to consider rehabilitation could result in disparities among defendants who receive new sentences and those who do not. But, the Court reasoned, any disparities are the result of "the ordinary operation of appellate sentencing review." *Id.* at 502. It went on to hold that "a district court at resentencing *may* consider evidence of the defendant's postsentencing rehabilitation and that such evidence *may*, in appropriate cases, support a downward variance from" the defendant's advisory Guidelines range. *Id.* at 481 (emphases added). The Court's decision in *Pepper* affords district courts wide latitude to decide if, and to what extent, rehabilitation should factor into a new sentence. *United States v. Doyle*, 857 F.3d 1115, 1121 (11th Cir. 2017) ("That's a double 'may' holding that leaves what consideration, if any, to give … post-sentencing rehabilitation … up to the district court.").

The district court here understood it had discretion to consider Stewart's efforts to rehabilitate, and it did. The court found "Stewart ha[d] made substantial efforts towards rehabilitation." It went on to ensure "his family and friends" knew those efforts "count[ed] for something." And that "something" was a below-Guidelines sentence.

Stewart pushes back, citing the district court's statement that it would not "be fair to other people in similar cases to have his post-offense conduct result in a drastic variance"

downward. To him, that reasoning flies in the face of *Pepper*. But Stewart misunderstands the Supreme Court as having replaced one categorical rule (a prohibition on considering rehabilitation) with another (a prohibition on considering sentencing disparities). As explained, though, the Court in *Pepper* left district courts free to decide the extent to which rehabilitation should influence a new sentence. Here, the district court mentioned concerns about disparate treatment to deny Stewart only a "drastic" downward variance, not to deny him a variance altogether. That was not an error.

**B**

We arrive last at the district court's sentencing explanation. The court either reduced or maintained Stewart's original sentences for each of the counts, except for the money laundering counts. Those sentences were increased from 120 to 240 months' imprisonment apiece. Yet the changes had no practical impact on Stewart's total sentence because Counts 5 and 6 ran concurrently with his otherwise longer 300-month sentence for possessing with intent to distribute a controlled substance. Still, Stewart faults the court for failing to explain the increases, especially given his efforts to rehabilitate.

District courts must sufficiently explain sentences both to ensure we can perform our appellate review function and to preserve fairness at sentencing. *United States v. Jett*, 982 F.3d 1072, 1079 (7th Cir. 2020). That said, this court has "repeatedly and unambiguously rejected the idea that sentences must be evaluated on a per-count basis." *United States v. Baldwin*, 68 F.4th 1070, 1074 (7th Cir. 2023). We have taken our cue from the Supreme Court, which has instructed courts that they may evaluate sentences in the aggregate—or as a package. *Dean v.*

*United States*, 581 U.S. 62, 67–68 (2017); *see also Jett*, 982 F.3d at 1080 (same).

The district court's explanation of Stewart's aggregate sentence was the gold standard. It noted the "overwhelming" evidence that supported his convictions, including the "large quantities of several lethal controlled substances" that could have "ruined" the lives of people in the greater Indianapolis community. Despite the harm Stewart caused, the court was unconvinced that he "really accepted responsibility." If that were not enough, he had an extensive criminal history, showing his lack of "respect for the law." And though Stewart's offenses were not necessarily "violent," they were "very, very dangerous." The court thus felt compelled to account for "the need to protect the public from" him. It weighed all this against the fact that Stewart had, indeed, "made substantial efforts towards rehabilitation and bettering himself." And in the end, it deemed a below-Guidelines sentence of 360 months' imprisonment appropriate.

We decline Stewart's invitation to order yet another resentencing because his money laundering counts, viewed in isolation, carried longer prison terms—especially when those counts had no substantive impact on his aggregate sentence.

*            *            *

Finding no errors with Stewart's resentencing, we AFFIRM.